IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EBC, INC. and STATE STEEL ) <br> SUPPLY INC. ) <br>     Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CLARK BUILDING SYSTEMS and ) <br> AMERICAN COMPOST CORPORATION ) <br> and A & M COMPOSTING, INC. and ) <br> SOLID WASTE SERVICES, INC. d/b/a ) <br>     Defendants. ) | Civil Action No. 05-CV-01549 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

This is an action for alleged breach of contract, fraudulent misrepresentation, unjust enrichment and account stated. Plaintiffs EBC, Inc. ("EBC")[1] and State Steel Supply, Inc. ("State Steel") entered into an agreement with Defendant Clark ("Clark"), a subcontractor, who in turn had an agreement with Defendant A & M Composting ("A&M"). Clark agreed to be the general contractor in the fabrication of a new steel building for A&M, and Clark turned to EBC and State Steel as subcontractors to help supply building material for the project. (Docket No. 35-2 at 27 & 55). In May of 2004, a letter sent from the general counsel of A&M offered to pay EBC and State Steel directly, with the approval of Clark, for any of the materials EBC and State Steel provided to Clark. (Docket No. 1 at 9-12).

Pending before this Court is Defendant A&M's Motion for Summary Judgment. (Docket

---

[1] Plaintiff EBC was dismissed without prejudice on motion brought by EBC pursuant to FRCP 419(a)(2) on November 14, 2007. Thereafter, the Court convened a status conference by telephone to inquire whether the parties would entertain settlement discussion given this dismissal. The parties agreed to consider same, however agreement could not be had. At the Court's request, Defendant A&M provided the complete deposition of Adrienne Chizek, President of Defendant State Steel, for its review in consideration of the pending motion for summary judgment. Said transcript was received on November 30 and filed of record on December 18, 2007.

1

No. 35) and Plaintiffs' Brief in Opposition to Summary Judgment (Docket No. 45). After careful consideration and for the reasons outlined below, this Court grants Defendant A&M's Motion for Summary Judgment with respect to the breach of contract and account stated claims but denies the same with respect to the unjust enrichment and fraudulent inducement claims.

**FACTS**

On April 14, 2004, Defendants Clark[2] and A&M entered into an agreement whereby Clark would manufacture and fabricate a new steel compost building of approximately 465,000 square feet for A&M.[3] (Defendant A&M's Concise Statement of Undisputed and Material Facts, Docket No. 35-2 at 12). The new building was a necessity for A&M, because in February of 2003 A&M's composting plant collapsed during a snowstorm causing $10 million dollars in damage and requiring extensive, EPA-monitored clean-up of the sewage sludge in the plant. (DE 35-2 at 8). The value of the new contract to replace the old sludge plant amounted to $2,428,476. (DE 35-2 at 13). In late-April and early-May of 2004, respectively, Clark entered into purchase order contracts with the EBC and State Steel to supply materials to Clark for the fabrication of the new building. (DE 35-2 at 27 & 55)

On May 26, 2004, William Fox, Defendant A&M's General Counsel, sent a letter to both

---

[2]

Defendant A&M and the Plaintiffs claim that Defendant Clark is currently out of business and Clark's assets were sold at a sheriff's sale. (Docket No. 35-2 at ¶ 11; Docket No. 46 at ¶ 11). Defendant A&M and the Plaintiffs also advised during a status conference held before this Court on August 8, 2007 that Defendant Clark now appears judgment proof and, therefore, the Plaintiffs seek recovery for the unpaid invoices from Defendant A&M..

[3]

Unless otherwise noted, the Court cites to Defendant A&M's concise statement of facts (Docket No. 35) and, when a dispute exists, to Plaintiffs' statement (Docket No. 46).

EBC and State Steel.[4] The letters were identical and advised both entities that A&M would pay them directly, with Clark's permission, for any materials they supplied to Clark for the A&M building. (Docket No. 1 at 9-12). These payments would then, in turn, be credited to the amount A&M owed Clark under the terms of their agreement. *Id.* The parties dispute why these letters were sent to EBC and State Steel. They suggest that the letters were provided because of concerns about the solvency of Clark, thus requiring them to realistically question Clark's ability and willingness to pay for the building materials. (Plaintiff's Response to Defendant A&M's Concise Statement of Facts, Docket No. 46 at 33-35 & 78). In fact, the Plaintiffs aver that the letters were written after EBC and State Steel demanded adequate assurance of payment from one or more of the defendants. (Docket No. 1 at 19). However, Adrienne Chizek, the owner of State Steel admitted in a deposition that she does not remember the reason the letter was sent, and furthermore that if A&M submitted payment in full to Clark, she would not have expected A&M to also pay State Steel.[5] (Docket No. 69, at 26, line 11). The Plaintiffs also contend that Defendant A&M was concerned about Clark's ability to manage the job financially, and complete it in a timely fashion. Therefore Defendant A&M sent the letters to EBC and State Steel to guarantee the continued supply of steel and related building materials to the job site. *Id*. As such, they claimed these letters created independent and enforceable contracts between them and A&M. Defendant A&M, however, contends that the letters were merely letters of accommodation that proposed direct and more convenient payment arrangements from Defendant

---

4

Although the letter to EBC is, in fact, dated May 26, 2004, EBC recalls receiving the letter later, more specifically in June or July 2004, after EBC had questioned attorney Fox about payments due on the project. Document No. 45, at n. 5.

5

While a potion of Chizek's deposition was attached as earlier exhibit and cited by both parties in briefs, at the request of this Court, the complete deposition of Adrienne Chizek was filed with this Court by Defendant A&M on December 18, 2007.

A&M to the Plaintiffs. *Id.*

By November 30, 2004, A&M's balance to Clark was paid in full. (Docket No. 46 at 90). Clark, however, still had outstanding invoices for materials received from EBC in the amount of $117,781.95, and from State Steel in the amount of $214,958.20. *Id.* EBC and State Steel contend that these unpaid invoices are for materials directly used by Clark in the construction of A&M's new sludge plant. *Id.* At 92. Neither Defendants A&M nor Clark paid the Plaintiffs pursuant to these invoices and as a result, Plaintiffs filed this lawsuit asserting claims based on theories of breach of contract, fraudulent inducement, unjust enrichment, and account stated on November 7, 2005.[6] (Docket No. 1 at ¶¶ 19, 20-43).

In their Complaint, EBC and State Steel allege that the May 26, 2004 letters created a contract between them and Defendant A&M which A&M then breached by refusing to pay the invoices for steel and other materials supplied to Clark for construction of A&M's building. (Docket No. 1 at ¶¶ 21-23; Docket No. 46 at 5-6). In the alternative, if this Court finds that no contract exists between the parties as a result of the letters in question, EBC and State Steel next contend that Defendants were unjustly enrichment by the delivery of these products which were used in the completion of Defendant A&M's new building. (Docket No. 1 at ¶¶ 36-39). Additionally, EBC and State Steel claim that Defendant A&M fraudulently induced them into the delivery of these materials. (Docket No. 1 at ¶¶ 28-35). Finally, EBC and State Steel contend that they have an account stated claim as Defendant A&M has unpaid and overdue accounts with them relating to the materials they provided to Defendant A&M. (Docket No. 1 at ¶¶ 40-43).

---

[6] Additionally, this Court notes that parallel litigation was brought in the Court of Common Pleas for Lancaster County in the form of an action on a mechanic's lien. Such action was filed on March 11, 2005, but was subsequently terminated for inactivity in accordance with PA. RCP 230.2.

Defendant A&M argues there are no genuine issues of material fact before this Court and therefore, moves for summary judgment on the counts outlined above. State Steel, the remaining plaintiff, counters that the circumstances of this case create issues of fact which must be tried before this Court.

**STANDARD**

Summary judgment under Fed. R. Civ. P. 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

While the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' – that is, pointing out to the District Court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998

5

F.2d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Celotex*, 477 U.S. at 325). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255 (1986); *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.); and *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the non-moving party).

**ANALYSIS**

**1.    Breach of Contract Claim**

Defendant A&M claims the evidence shows unequivocally that the May 26, 2004 letter to the Plaintiffs could not be the basis of an independent contract between Defendant A&M and Plaintiffs, and that therefore Plaintiffs' breach of contract claim must be dismissed. This Court agrees as to State Steel's claim.

Under Pennsylvania law a contract is formed between parties if the parties: (1) reach a mutual

understanding; (2) exchange consideration; and (3) delineate the terms of the bargain with sufficient clarity. *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003). The existence of an undisputed set of facts makes the question of a contract's existence a matter of law. *Refuse Management Systems, Inc. v. Consolidated Recycling & Transfer Systems, Inc.*, 671 A.2d 1140, 1146 (Pa. Super. 1996) (citing *Buff v. Fetterolf*, 215 A.2d 327, 330 (Pa. Super. 1966)). If, however, the evidence surrounding the existence of a contract is ambiguous and susceptible to more than one reasonable interpretation, the issue of that contract's existence is a question of fact and therefore a motion for summary judgment must fail. *American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.*, 62 F.3d 574, 581 (3d Cir. 1995) The issue focuses on whether a reasonable person in the position of the Plaintiffs could have concluded that Defendant A&M made a commitment to be indebted to the Plaintiffs for all of the material delivered for the Defendant's new building given the letter in question.

The parties frame their dispute around whether or not the May 26, 2004 letters constitute contracts.[7] (*See* Docket No. 36, at 3-4, and Docket No. 45, at 4). Plaintiffs argue that these letters

---

[7]

This Court notes that, on August 17, 2007, in the Plaintiffs' Supplemental Brief and Pretrial Memorandum, the Plaintiffs raise, for the first time, the argument that an oral contract existed between Defendant A&M and EBC and State Steel, and that any attempt by A&M to use the affirmative defense of the statute of frauds has not been pled and is therefore waived. (Document No. 63, at 1-2). This Court finds this theory problematic. If the Plaintiffs believed that one of their potential theories of recovery was that they had an oral contract with A&M, then Plaintiffs had a duty to raise this theory in the original complaint pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, or to subsequently amend their complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Alternatively, with the close of discovery in this case, they could have moved to amend to conform with the evidence. That was not done here.

Turning to the potential statute of frauds defense, since the alleged contract involved the sale of goods over five hundred ($500) dollars, § 2201(a) of the Pennsylvania Commercial Code, *See* 13 Pa. C.S.A. § 2201(which is similar to § 2-201 of the Uniform Commercial Code) generally bars enforcement without a writing sufficient to indicate that contract was formed, and was signed by the party against whom enforcement is sought, unless it meets one of § 2201's specific exceptions. *See* 13 Pa. C.S.A. § 2201(c). The Court notes that under Federal Rule of Civil Procedure 8(c), the Defendant could plead the state of frauds as an affirmative defense on Plaintiffs' claim based on an alleged oral contract, if such claim be made.

create an enforceable contract between Defendant A&M and themselves. Defendant A&M argues, however, that the letter, as a matter of law, cannot be construed as a contract. In essence, both parties agree that the issue before this Court is the proper characterization of the May 26th letters. This Court agrees.

This Court next then turns to an examination of these letters. In determining whether a contract exists the "initial resort should be to the 'four corners' of the agreement itself." *Id.* (quoting *Washington Hospital v. White*, 889 F.2d 1294, 1300 (3d Cir.1989)). If the 'four corners' of the agreement are not susceptible to more than one reasonable interpretation or construction, then the agreement can be considered unambiguous. *Washington Hospital*, 889 F.2d at 1300 - 1301. Determining whether an ambiguity exists is a pure question of law for the court. *International Brotherhood of Boilermakers, etc. v. Local D504*, 866 F.2d 641 (3d Cir. 1989), *cert. denied*, 493 U.S. 812 (1989); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358 (3d Cir. 1987). In making a determination of whether such ambiguity exists, the court does not just look to whether the language is clear, but instead it "hear[s] the proffer of the parties and determine[s] if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *American Flint Glass*, 62 F.3d at 581 (quoting *Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F2d 132, 135 (3d Cir. 1993) (citations omitted)). Additionally, as A&M's counsel drafted the letters, any ambiguity in them is construed against A&M. *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006).

---

The Court finds that neither party raised the issue of an alleged breach of an oral contract or an affirmative defense of the statute of frauds in their written submissions to this Court, until August 16, 2007, when Plaintiffs filed their Supplemental Brief and Pretrial Memorandum opposing Defendant's motion for summary judgment, (Docket No. 63), and August 24, 2007, when Defendant A&M filed its reply brief (Docket No. 64). Further, as noted above, Plaintiffs have not moved to amend their complaint, nor has Defendant A&M moved to amend its answer. Therefore, the Court need not address these issues further at this time.

If the available evidence is in conflict as to whether the parties intended the May 26, 2004 letters to constitute an enforceable contract, a question of fact exists as to whether the letters constitute a contract. *Yellow Run Coal Co. v. Alma-Elly-Yv Mines*, 426 A.2d 1152, 1154 (Pa. Super. 1981). Here, as stated, the parties disagree on the intent of the letters in question.

In order to reasonably interpret the May 26th letters as a contract, this Court must find that it is reasonable for the Plaintiffs to have found all of the elements of a contract to exist in the writing, including consideration. *Com. Dept. of Transp. v. First Pennsylvania Bank, N.A.*, 466 A.2d 753, 754 (Pa. Cmwlth. 1983). The requirement of consideration is nothing more than the requirement for a bargained for exchange. *Estate of Beck*, 414 A.2d 65 (Pa. 1980). "Consideration consists of a benefit to the promisor or a detriment to the promisee." *Weavertown Transport Leasing, Inc.*, 834 A.2d at 1172, *citing Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A.2d 127, 128 (1940). And, of course, as mentioned *supra*, the purported contract must delineate the terms of the bargain with sufficient clarity. *Id.* The agreement will be considered sufficiently definite if the parties reach an agreement and if there is an appropriate basis upon which the court can fashion a remedy. *Id.*; *See also First Home Savings Bank v. Nernberg*, 648 A.2d. 9, 14 (Pa. Super. 1994).

Applied to the instant case, it is not unreasonable for a person in the Plaintiff's position to view the letter in question as an enforceable agreement. The Plaintiffs' argument that Defendant A&M offered to pay Plaintiffs for any material supplied to Defendant Clark for use in Defendant A&M's building is not an unreasonable or untenable reading of the letter. Defendant A&M's May 26, 2004 letter provides, in relevant part, "[w]ith respect to any balance that Clark may owe your company for the web materials, our company is willing, with Clark's permission, to pay you directly or by a joint check made payable to Clark and your company within the seven day period, as long

9

as our payment is credited by Clark against the amount we owe under our contract with Clark." (Docket No. 1, Exhibit A at 1-2). Despite the conditional nature of this phrase ("as long as"), it is reasonable to read this as an offer by Defendant A&M to pay for the materials supplied to Defendant Clark by the Plaintiffs.

However, the facts on the record do not support such a reading as to remaining Plaintiff State Steel. Adrienne Chizek, owner of State Steel, admitted in a deposition that she did *not* expect to be paid by A&M if A&M had already paid Clark for State Steel's materials. (Docket No. 69, at 26:5-11). When asked if Defendant A&M had a contract with Clark for $2.4 Million, including State Steel's supplies, and that Clark was in fact then paid the whole $2.4 Million, would she expect Defendant A&M to pay State Steel additional monies, Chizek responded, "No, I don't think I would have expected that." (Docket No. 69, at 26:5-11). Additionally, when Chizek was asked why the letter from Defendant A&M was sent to State Steel, Chizek replied, "[h]onestly, I don't [know]", *id.*, at 23:19, and "so I don't remember what - why it came to this, that they sent it", *id.*, at 24:25. Chizek also admitted that even after receiving the May 26, 2004 letters that she had no expectation of billing Defendant A&M directly. *Id.* at 24:8-11.

State Steel's understanding of the circumstances surrounding the purpose of the letter and its intent upon receiving the letter are essential to understanding whether a contract was, in fact, formed by that letter. In ascertaining the intent of the parties to a contract , it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter. *General Warehousemen and Employees Union Local No. 636 v. J.C. Penney Company*, 484 F.Supp. 130, 135 (W.D. Pa. 1980). If State Steel believed that no contract existed as a result of the May 26, 2004 letters and its manifested intent to Defendant A&M did not demonstrate a belief to

the contrary, then no contract would exist. Because State Steel by way of its owner, Adrienne Chizek, voiced its belief that the letters did not guarantee the payment of additional monies to State Steel from Defendant A&M and nothing in State Steel's actions with A&M indicated its belief that they were operating under a contract, this Courts finds that there are no genuine issues of material fact as to whether a contract was formed by the May 26, 2004 letters between State Steel and A&M. Accordingly, this Court grants Defendant A&M's motion for summary judgment as to State Steel's breach of contract claim.

2. **Unjust Enrichment Claim**

In the event that no contract is found to exist between the parties, Plaintiffs assert an alternative theory of recovery–unjust enrichment. Defendant A&M argues that it is entitled to summary judgment on Plaintiffs' claim for unjust enrichment because the Plaintiffs fail to put forth any evidence that Defendant A&M accepted and retained benefits from the Plaintiffs which would be inequitable for them to retain. (Defendant's Reply Brief to Plaintiffs' Opposition to Summary Judgment, Docket No. 52 at 11).

Under Pennsylvania law, the elements necessary to prove that a party is entitled to recovery under the equitable doctrine of unjust enrichment are: 1) benefits were conferred on one party by another party; 2) the appreciation of such benefits by the recipient; and 3) the acceptance and retention of those benefits under circumstances that are inequitable for the recipient to retain those benefits without payment of value. *Lauren W. ex rel. Jean W. V. Deflaminis*, 480 F.3d 259, 277 (3d Cir. 2007) (citing *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000)). The passive receipt of a benefit under circumstances where it would be unconscionable for the Defendants to keep such benefits without payment is enough to sustain such a claim. *See*

*Ankerstjerne v. Schlumberger Ltd.*, 2004 WL 1068806, at *6 (E.D. Pa. May 12, 2004) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d. Cir.1987)); *see also Comcast Spectacor L.P. v. Chubb & Son, Inc.*, 2006 WL 2302686, *23 (E.D. Pa. 2006) (citing *Hershey Foods*, 828 F.2d at 999) (providing that the doctrine of unjust enrichment addresses situations where one party received a benefit that would be unconscionable to retain without compensating the provider).

Additionally, under Pennsylvania law, a claim of unjust enrichment is unavailable where the relationship, rights and duties of the parties are premised upon a written agreement. *Curley v. Allstate Ins. Co.*, 289 F.Supp.2d 614, 619 -620 (E.D.Pa., 2003) (citing *Schott v. Westinghouse Elec. Corp.,* 259 A.2d 443, 448 (Pa. 1969); *Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co.,* 44 A.2d 571, 574 (Pa. 1945). In fact, "[w]here an express contract governs the relationship between the parties, a party's recovery is limited to the amount provided in the express contract, and where the contract fixes the value of the services involved, there can be no recovery under a theory of quantum meruit."*see Combustion Systems Services, Inc. v. Schuykill Energy Resources, Inc.*, 1993 WL 523713, at *5 (E.D. Pa. Dec. 15, 1993) (citations omitted).

Defendant A&M relies upon *Meyers Plumbing and Heating Supply Co. v. West End Federal Savings & Loan Association*, 498 A.2d 966 (Pa. 1965) in support of its argument that Plaintiffs fail to meet the third element i.e., a benefit received by the Defendant under unjust circumstances requiring payment to the Plaintiffs. In *Meyers,* the payment in full to a contractor for the work and materials of both the contractor and subcontractor for the work performed, where the contractor subsequently failed to make payments to subcontractor, was found not to sustain a claim for unjust enrichment. *Id.* at 969. The Pennsylvania Supreme Court determined that obligating the property owner to pay the subcontractor for the materials and work supplied to the contractor would in

essence amount to making them pay twice. *Id.* Because the property owners had already paid the contractor for the work and materials, the Court determined that "it can hardly be said that the owners' "enrichment" from the plumbing and heating materials is unjust." *Id*.

*Meyers*, however, is clearly distinguishable from the instant case in several important respects. First, in *Meyers* there was no genuine issue of material fact as to whether there had been any oral promises made between the parties and thus there could be no recovery as a matter of law. *Meyers*, 498 A.2d at 966. Secondly, the contracts between the general contractor and the owner included a non-lien agreement which stipulated that no claim for work or materials would be made against the owners except as provided for in their building construction contract. In addition, the general contractor signed a contractor warranty which provided inter alia that he would protect, defend and indemnify the owners for any claims for unpaid work, labor, or materials. *Id.* at 967. Additionally, Meyers involved a single general contractor and a single subcontractor that was paid by the owner for the work that had done. *Id.* The owner paid the general contractor the entire amount for the work done and directed that the contractor pay the subcontractor for the subcontractor's portion. *Id.* at 969. Thus, it is clear from the facts and wholly undisputed, that the owner paid for the total amount of the work done. The dispute therefore revolved around the appropriate apportionment of the monies paid. This is not the case here.

Plaintiff argues that Defendant A&M, by its own calculations, has failed to pay the contractor (Defendant Clark - $730,684.02) and subcontractors (State Steel - $280,000; and EBC $851,134.86) the total contract price of $2.4 million and therefore could not be said to have paid for work and

materials twice.[8] (Plaintiffs' Opposition to Summary Judgment, Docket No. 45 at 19). Defendant's argument does not seem to take into account amounts owed to other parties or subcontractors involved in the construction of Defendant A&M's building. Plaintiffs in the instant case were not the only subcontractors of Defendant Clark on this project and Defendant A&M has said that the $2.7 million dollar total contract price paid to Defendant Clark included payment for materials and work provided by Plaintiffs and all other subcontractors. (Defendant's Reply Brief to Plaintiffs' Supplemental Brief, Docket No. 64 at 5-6).

Accordingly, because a dispute exists as to whether Defendant A&M did, in fact, pay for all the materials used in the construction of its building, this Court denies the Defendant's motion for summary judgment on the claim of unjust enrichment.

**3.     Fraudulent Inducement Claim**

Defendant A&M additionally argues that Plaintiffs' contention that the May 26, 2004 letters from Defendant A&M to Plaintiffs fraudulently induced them to continue supplying materials is without legal merit. This Court does not agree.

Under Pennsylvania law, to recover on a claim of fraud or fraudulent inducement, the plaintiff must demonstrate by clear and convincing evidence: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance. *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. 2002); see also *McCloskey v. Novastar Mortg.*,

---

[8] The Court notes that Defendant A&M argues that the actual amount paid on the contract was $2.7 million and not $2.4 million, but for the purposes of this argument and analysis, the distinction is unimportant.

*Inc.*, Civil Action No. 05-1162, 2007 WL 2407103, at *9 (E.D. Pa. Aug. 21, 2007) (citations omitted); *see also Fahs-Rolston Paving Corp. v. Ammann & Whitney Pennsylvania, Inc.*, Civil Action No. 05-CV-5082, 2007 WL 2345280, at *2 (E.D. Pa. Aug. 15, 2007) (same) (citation omitted). A misrepresentation will be deemed material where "it is of such character that had it not been made, . . . the transaction would not have been consummated." *Sewak v. Lockhart*, 699 A.2d 755, 760 (Pa.Super.1997) (citation omitted).

First, Defendant A&M argues that Plaintiffs have failed to sufficiently plead a claim of fraudulent inducement. (The Court is left to wonder why Defendant raises this concern in its Motion for Summary Judgment instead of raising it earlier by filing a Motion to Dismiss for failure state a claim of fraudulent inducement). However, in this Court's estimation, Plaintiffs have sufficiently pled a claim for fraudulent inducement.[9]

Secondly, Defendant A&M argues that the Plaintiffs have failed to offer evidence that Defendant knowingly made any false representations with the intent to induce Plaintiffs into continued performance. Under Pennsylvania law, a determination of whether allegedly false statements were honestly made with the intention to perform in the future entails questions of fact. *Rosen v. Communication Services Group*, Inc., 155 F. Supp. 2d 310, 321 (2001). Factual

---

[9] Under Rule 9(b) Plaintiffs are subject to a heightened pleading standard which requires that "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ. P. 9(b). This standard, however, is not particularly onerous, and under the federal notice pleading rules, taking into account the special pleading requirements of Rule 9(b), an allegation of fraud that simply gives fair notice as to the plaintiff's claim consistently have been upheld. *See Gardner v. Surnamer*, 599 F.Supp. 477, 481 (E.D. Pa. 1984) (where the complaint listed the parties involved, the roles in the transaction at issue and some specific examples of the misrepresentations, the court did not require an amended complaint); *Consumers Time Credit, Inc. v. Remark Corp.*, 227 F.Supp 263, 266-67 (E.D. Pa. 1964) (a complaint that avers a concealment and transfer of property with the intent to defraud the plaintiff "sufficiently apprises petitioners of the scope and character of plaintiff's claim."). Additionally, the recent case of *Bell Atlantic Corp. v. Twombly* hadn't been decided when this case was initiated and so its admonition that "[f]actual allegations must be enough to raise a right to relief above a speculative level" would not appear to apply in the instant case. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

determinations are the sole province of the jury. *Rohm and Haas Co. v. Continental Cas. Co.*, 566 Pa. 464, 478 (2001). Furthermore, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Here, no jury trial demand was made. Hence, this Court will sit as trier of fact, weighing the evidence and determining credibility.

As with the breach of contract claim, the Plaintiffs rely on the May 26, 2004 letters as the source of the fraudulent misrepresentation. Additionally, Plaintiffs argue that Bob Clark, the Controller for the Defendant, made statements in early 2005 and sometime after July 11, 2005 specifically promising that the Defendant would pay the Plaintiffs' outstanding invoices.

Plaintiffs allege that Defendant A&M made a material and fraudulent misrepresentation by offering to pay the Plaintiffs directly for any material provided to Defendant Clark for the completion of the building as stated in the May 26, 2004 letter. Plaintiffs contend that this representation was fraudulent because Defendant A&M made this representation "knowing" that they would only make payments on the balance of their contract with Defendant Clark. Plaintiffs claim that, relying on this representation (and other representations), they continued to supply steel and other building materials and, as a result, suffered the economic detriment outlined above.

Defendant A&M, however, argues that Defendant Clark was the party that requested the letter be sent to the Plaintiffs and that Defendant A&M complied with Defendant Clark's wishes. Accordingly, Defendant A&M argues, there is no evidence that it attempted to mislead or injure the Plaintiffs. This Court notes, however, that it is not necessary to show an intent to injure, but merely an intent to deceive on the part of the party making the representation. *Skurnowicz*, 798 A.2d at 794. Because the parties proffer entirely different reasons for sending the May 26th letter and the

statements of Mr. Clark, determining the real reason for their issuance is a factual inquiry and credibility is at issue.

If, as asserted by the Plaintiffs, these letters (and statements) were issued by Defendant A&M to Plaintiffs to allay their fears pertaining to Defendant Clark's solvency,[10] then Defendant A&M's letter may have been sent in order to guarantee the continued delivery of steel to Defendant Clark. In addition, if the Plaintiffs' contention as to why the letters were sent is true, more specifically that they were sent because Defendant A&M had knowledge that Clark was having financial difficulties, then a fact finder could potentially infer that the letters were sent to motivate the Plaintiffs to continue performance. Given this matter is before the Court on a summary judgment motion, this Court will draw all inferences in a light most favorable to the non-moving party. *Doe v. County of Centre, Pa.*, 242 F.3d at 446.

Additionally, if, as the Plaintiffs suggest, Controller Clark made specific promises to pay Plaintiffs for materials for which Defendants had no true intention of paying, *see* Docket No. 46, at ¶¶ 83, 84, fraud is certainly a possible interpretation of said behavior. Accordingly, because there are genuine issues of material fact in dispute with respect to the Defendant A&M's intentions in sending the referenced letters and Controller Clark's statements, the Court denies Defendant's motion for summary judgment as to the fraudulent inducement claim.

4. **Account Stated Claim**

Defendant A&M also claims that Plaintiffs have failed to set forth sufficient facts to sustain a claim for account stated. This Court agrees.

---

[10] The Court notes that this is not a totally unrealistic concern on the part of the Plaintiffs given that Defendant Clark subsequently declared bankruptcy and Clark's property and assets were sold at a sheriff's sale. (Docket No. 35-2 at ¶ 11; Docket No. 46 at ¶ 11).

In Pennsylvania, the claim of account stated is based on an "account in writing, examined and accepted by the both parties." *See Ryon v. Andershonis*, 42 Pa. D. & C.2d 86, 88 (Pa. Comm. Pl. March 13, 1967) (involving objections to plaintiff's complaint), *citing Leinbach v. Wolle,* 61 A. 248 (Pa. 1905). An account stated claim consists of an agreement to, or acquiescence in, the correctness of the account, so that in proving the account stated, it is not necessary to show the nature of the original transaction, or indebtedness, or to set forth the items entering into the account. *Ryon v. Andershonis*, 42 Pa. D. & C.2d at 88, *citing David v. Veitscher Magnesitweike Action Gesellschaft*, 35 A.2d 346, 349 (Pa. 1944). In simpler terms, an account stated claim is a promise by a debtor to pay a **stated sum of money which the parties have agreed upon as the amount due**. Restatement (Second) of Contracts §282(1)(emphasis added). "Where the evidence tending to show the statement of account is not in dispute, the question as to whether the transaction amounts to an account stated is for the determination of the court." *Veitscher Magnesitweike Action Gesellschaft*, 35 A.2d at 349.

In the case at bar, the parties dispute not just the existence of an agreement, but also the amount, if any, that is due to the Plaintiffs. In fact, the May 26, 2004 letters provide no specific dollar amount due from Defendant A&M to the Plaintiffs, and the record does not provide any evidence of dollar amounts that the Parties agree are owed for the materials provided by the Plaintiffs to Defendant A&M. Accordingly, because there is no agreement or acquiescence in the amount owed, this Court, even drawing inferences in favor of the non-moving party, as it must, finds that the Plaintiffs have not established facts which might lead a trier of fact to find a proper account stated claim in their favor. For this reason, the Court grants Defendant A&M's motion for summary judgment with respect to the account stated claim.

## CONCLUSION

Accordingly, this 21st day of December, 2007, upon due consideration of Defendant's Motion for Summary Judgment [DE 35], as well as all related briefing, and for the foregoing reasons, Defendant A&M's Motion for Summary Judgment with respect to the Plaintiffs' breach of contract and account stated claims is GRANTED. Defendant A&M's Motion for Summary Judgment with respect to the unjust enrichment and fraudulent inducement claims is DENIED. An appropriate order follows.

*/s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc:     All counsel of record