**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EBC, INC. and )
STATE STEEL SUPPLY, INC., )
              )
      Plaintiffs, )
    vs. )     Civil Action No. 05-1549
             )     Judge Nora Barry Fischer
CLARK BUILDING SYSTEMS, INC., )
AMERICAN COMPOST CORPORATION,)
A & M COMPOSTING, INC. and )
SOLID WASTE SERVICES, INC. doing )
business as J.P. MASCARO & SONS, )
             )
      Defendants. )

## MEMORANDUM OPINION

## I.    INTRODUCTION[1]

This action is before the Court on Plaintiff State Steel Supply, Inc.'s ("State Steel" or

"Plaintiff")[2] claims of unjust enrichment and fraudulent inducement against Defendants American

Compost Corporation, A & M Composting and Solid Waste Services, Inc., doing business as J.P.

Mascaro & Sons ("Defendants").[3]  A non-jury trial was conducted on Plaintiff's claims on May 5

---

[1]

    The Court notes that the Court issued an Order of Court on this date amending the
Memorandum Opinion and Order issued on December 21, 2007 to reflect that summary judgment
had been granted in favor of Defendants American Compost Corporation, A & M Composting and
Solid Waste Services, Inc., doing business as J.P. Mascaro & Sons.

[2]

    The Court notes that, Plaintiff, as used herein, shall refer only to Plaintiff State Steel and not
Plaintiff EBC, which voluntarily dismissed its claims against Defendants on November 14, 2007.
(*See* Docket Nos. 65 & 66).

[3]

    The Court notes that, as discussed in further detail below, Clark Building Systems, Inc., while

and May 6, 2008 before the undersigned Judge. At the conclusion of Plaintiff's case-in-chief, Plaintiff made an oral motion for reconsideration of the Court's earlier Memorandum Opinion and Order granting Defendants' motion for summary judgment as to Plaintiff's breach of contract claim. *Transcript of Trial Proceedings 5/6/08* ("*Tr. 5/6/08*") at 137-138. In addition, Defendants moved for judgment in their favor on Plaintiff's unjust enrichment and fraudulent inducement claims under Rule 52(c) of the Federal Rules of Civil Procedure. *Tr. 5/6/08* at 139:6-11. Pursuant to a Court Order, the parties have submitted proposed findings of fact and conclusions of law to the Court. Based on the following, Plaintiff's Motion is DENIED and Defendants' Motions are GRANTED.

## II.    PROCEDURAL HISTORY

This action was initially filed on November 7, 2005 by Plaintiffs EBC, Inc. and State Steel against Defendants Clark Building Systems, Inc., American Compost Corporation, A & M Composting, Inc. and Solid Waste Services, Inc. (Docket No. 1). Plaintiffs alleged that Defendants were liable to them under theories of breach of contract, unjust enrichment, fraudulent inducement and account stated. *Id.* Defendants American Compost Corporation, A & M Composting, Inc. and Solid Waste Services, Inc. filed their Answer on January 11, 2006. (Docket No. 7). Defendant Clark did not file any Answer or responsive pleading nor did it join the other Defendants' Answer.[4] The parties then proceeded to discovery. A settlement conference was conducted on December 12, 2006

---

listed as a Defendant on the Docket of this matter, was not an active party at the bench trial or at any other proceedings described herein. However, former representatives of Clark Building Systems, Inc., Solomon Wansor and Jeffrey Smith did testify at the bench trial during Plaintiff State Steel's case-in-chief.

[4]

    The Court notes that no action has been taken by Defendant Clark Building Systems to defend the Plaintiffs' claims in this matter and, likewise, no affirmative action has been taken against it by Plaintiff State Steel or EBC (prior to its voluntary dismissal).

before the Honorable David S. Cercone at which time the matter did not settle. (Docket No. 18).

On March 28, 2007, Defendants filed a Motion for Summary Judgment, (Docket No. 34), Brief in Support (Docket No. 35) and Concise Statement of Material Facts (Docket No. 35-2). Then, on March 29, 2007, Defendants filed corresponding appendices. (Docket No. 39). In reply, Plaintiffs filed a motion for extension of time to file a brief in opposition to Defendants' motion on April 23, 2007. (Docket No. 40). On April 27, 2007, the matter was reassigned from the Honorable David S. Cercone to the undersigned Judge. (Docket No. 41). The first motion for extension of time was then granted by the Court on May 1, 2007 (Docket No. 42), and a second motion for extension of time (Docket No. 43) was granted on May 16, 2007. Then, on May 25, 2007, Plaintiffs filed their Brief in Opposition, Counterstatement of Facts and corresponding appendices in response to Defendants' Motion for Summary Judgment. (Docket Nos. 45-48). Defendants also requested an extension of time in which to file their Reply brief (Docket No. 49), which was granted by the Court on June 7, 2007 (Docket No. 51). Thereafter, Defendants filed their Reply Brief (Docket No. 52), Response to Plaintiffs' Counterstatement of Facts (Docket No. 54) and supplemental appendices (Docket No. 56). A second settlement conference was held on July 17, 2007, at which time the parties engaged in settlement negotiations, but the case was not resolved. (Docket No. 60). Each party then filed supplemental briefs updating any changes in the law in their previous briefs relating to Defendants' motion. (Docket Nos. 63 & 64).

Prior to the Court's resolution of Defendants' pending motion, on November 14, 2007, Plaintiff EBC filed a Motion to Dismiss its claims against Defendants under Rule 41(a)(2) of the Federal Rules of Civil Procedure. (Docket No. 65). Plaintiff EBC requested that its claims be dismissed without prejudice as it no longer desired to pursue the litigation. *Id.* Such Motion was

granted by the Court on the same day. (Docket No. 66). Pursuant to said Motion, Plaintiff EBC was then dismissed from the case.

This Court issued a Memorandum Opinion and Order on December 21, 2007, granting in part and denying in part Defendants' Motion for Summary Judgment. (Docket Nos. 70-71); *EBC, Inc. et al. v. Clark Bldg. Systems et al*, Civ. A. No. 05-1549, 2007 WL 4563518, 2007 U.S. Dist. LEXIS 93817 (W.D.Pa. Dec 21, 2007). Specifically, the Court granted Plaintiff's breach of contract and account stated claims but denied its unjust enrichment and fraudulent inducement claims. *Id*. Thereafter, on January 4, 2008, Plaintiff filed a Motion for Reconsideration regarding the Court's grant of summary judgment on its breach of contract claim. (Docket No. 72). By Memorandum Order of January 16, 2008, the Court denied Plaintiff's Motion for Reconsideration, upholding the earlier Memorandum Opinion and Order that Defendants were entitled to summary judgment as to Plaintiff's breach of contract claim. (Docket No. 76); *EBC, Inc. et al. v. Clark Bldg. Systems et al*, Civ. A. No. 05-1549, 2008 WL 169743, 2008 U.S. Dist. LEXIS 3728 (W.D.Pa. Jan 16, 2008). Subsequently, on January 22, 2008, Plaintiff filed a Motion for Reconsideration regarding the Court's Memorandum Order of January 16, 2008, denying its first Motion for Reconsideration (Docket No. 77), which was also denied by this Court on February 5, 2008 (Docket No. 81).

Relating to the bench trial, Plaintiff filed its Pretrial Statement on January 9, 2008. (Docket No. 73). Defendants filed their Pretrial Statement on January 23, 2008. (Docket No. 78). This Court issued a Pretrial Order on February 7, 2008. (Docket No. 83). Thereafter, both parties filed Supplemental Pretrial Statements, Plaintiff on February 14, 2008 (Docket No. 85), and Defendants on February 15, 2008 (Docket No. 86). Subsequently, on February 14, 2008, Plaintiff filed a Motion for Order to Allow Testimony of Christopher Nielson (Docket No. 84), which was denied by the

Court on March 3, 2008 (Docket No. 99). Then, in yet another attempt to save its breach of contract claim, Plaintiff filed a series of motions on February 20, 2008. (Docket No. 87). Specifically, Plaintiff filed alternative motions for certification of appeal under Rule 54(b) of the Federal Rules of Civil Procedure, for an interlocutory order under 28 U.S.C. § 1292(b), and to allow the trial testimony of Adrienne Chizek regarding its breach of contract claim. *Id.* Said motions were all denied by Memorandum Order of the Court on March 17, 2008. *Id.*; *EBC, Inc. et al. v. Clark Bldg. Systems et al*, Civ. A. No. 05-1549, 2008 WL 728541, 2008 U.S. Dist. LEXIS 21018 (W.D.Pa. Mar 17, 2008).

Pursuant to the Court's Pretrial Order, the parties filed designations and counter-designations of deposition testimony by the April 21 and 28 deadlines set forth therein. (*See* Docket Nos. 103, 104, 108, 111, 112). On April 30, 2008, the parties filed their Joint Trial Stipulations.[5] (Docket No. 113). Thereafter, on May 1, 2008, the parties filed Joint Exhibit List Volumes I (Docket No. 116) and II (Docket No. 114), and Plaintiff (Docket No. 117) and Defendants (Docket No. 115) filed their list of disputed exhibits. On May 5, 2008, the Court held a Pretrial Exhibit Hearing at which time it entertained argument as to the disputed exhibits. (Docket No. 120). Also, on May 5, 2008, Defendants filed a trial brief. (Docket No. 119). Immediately after the Pretrial Exhibit Hearing, the bench trial commenced. Plaintiff proceeded to put on its case-in-chief for two days, May 5 and 6, 2008. (*See* Docket Nos. 122, 123). During its case-in-chief, Plaintiff offered the testimony of the following individuals: (1) Solomon Wansor, the former President of Clark Building Systems, Inc.;

---

[5]

As discussed in further detail in the Court's findings of fact below, the parties stipulated that Plaintiff was paid a total of $280,000.00 as a result of a joint payment by Defendants and Clark of $100,000 and two direct payments by Defendants of $90,000.00 each. (Docket No. 113 at ¶¶ 5-9).

(2) Jeffrey Smith, the former Treasurer and Secretary of Clark Building Systems, Inc.; (3) William Fox, Jr., General Counsel for Defendants (per cross-examination); and (4) Adrienne Berg, President of Plaintiff State Steel. *Id.*

Plaintiff rested its case on May 6, 2008 and, at that time, made an oral motion for reconsideration of the Court's Memorandum Opinion and Order granting Defendants' motion for summary judgment as to Plaintiff's breach of contract claim. *Tr. 5/6/08* at 137:18-138:17. Defendants then made oral motions for judgment in their favor under Rule 52(c) of the Federal Rules of Civil Procedure as to Plaintiff's claims of unjust enrichment and fraudulent inducement. *Tr. 5/6/08* at 139:6-11. Upon consideration of the argument set forth by counsel for both parties and the evidence presented at trial, the Court found that it was inclined to deny Plaintiff's motion for reconsideration of its breach contract claim and grant Defendants' motions for judgment in their favor as to Plaintiff's unjust enrichment and fraudulent inducement claims. *Tr. 5/6/08* at 173:3-10. As Defendants had submitted a trial brief (and Plaintiff had not), the Court ordered that the parties file proposed findings of fact and conclusions of law and set an appropriate briefing schedule. (Docket No. 119); *Tr. 5/6/08* at 173:3-174:16.

The trial transcript was filed with the Court on June 16, 2008. (Docket Nos. 122, 123). Thereafter, on July 1, 2008, the Court issued an Order amending the briefing schedule in this matter. (Docket No. 124). In accordance with that Order, on July 16, 2008, Plaintiff filed its Brief in Opposition to Defendants' Oral Motion for Judgment as a Matter of Law (Docket No. 125) and Proposed Findings of Fact and Conclusions of Law (Docket No. 127). On August 15, 2008, Defendants responded by filing their Proposed Findings of Fact and Conclusions of Law (Docket No. 128) and Supplemental Brief in Support of their Rule 52(c) Motion for Judgment in Their Favor

(Docket No. 129). The Court then granted Plaintiff's Motion for Leave to File a Reply Brief, which was filed by Plaintiff on August 29, 2008. (Docket No. 133). The pending motions are now fully briefed and ripe for disposition.

## III. LEGAL STANDARD

Rule 52(c) of the Federal Rules of Civil Procedure provides that:

> [i]f a party had been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim ... that, under the controlling law, can be maintained ... only with a favorable finding on that issue.

FED. R. CIV. P. 52(c). When ruling on a motion under Rule 52(c), the Court does not "draw any inferences in the nonmovant's favor nor concern itself with whether the nonmovant has made out a prima facie case. Instead, the court's task is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *Giant Eagle, Inc. v. Fed. Ins. Co.*, 884 F. Supp 979, 982 (W.D. Pa. 1995)(citing 9A CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d, § 2573.1). The Court is also required to assess the credibility of witnesses to determine whether Plaintiff has "demonstrated a factual and legal right to relief by a preponderance of the evidence." *Parker v. Long Beach Mortg. Co.*, 534 F.Supp.2d 528, 535-536 (E.D.Pa. 2008)(citing *Rego v. ARC Water Treatment Co. of PA.,* 181 F.3d 396, 399 (3d Cir.1999) (holding that "[i]n cases in which a district court enters a judgment under Rule 52(c), the district court can resolve disputed factual questions.")). Further, "[c]redibility determinations alone are insufficient to satisfy the requirements of Rule 52(c)." *Parker*, 534 F.Supp.2d at 536 (citing *Newark Branch NAACP v. City of Bayonne*, 134 F.3d 113 (3d Cir.1998)). Lastly, "[a] judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52 (a)."

FED. R. CIV. P. 52(c).

Accordingly, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a).

## IV.    FINDINGS OF FACT[6]

### A.    A & M Composting Facility

Defendants operate the A & M composting facility in Manheim, Lancaster County, Pennsylvania. (Docket No. 113, *Joint Trial Stipulations*, at 1). A severe snowstorm caused the building roof at the A & M Composting facility to collapse in February 2003. *Id*. at 2. As a result, the entire building required replacement. *Id*. at 3. Defendants contracted with general contractor Clark Building Systems, Inc., a company that manufactured pre-engineered metal buildings at its Clark, Pennsylvania location, to fabricate three steel buildings to replace the collapsed building. *Joint Trial Ex. 13*. As discussed in further detail below, the parties agreed that time was of the essence in the performance of this contract because of Defendants' obligations under an agreement to provide composting services at the A & M Composting facility with a governmental entity. *Id*. at ¶¶ 9, 14; *Joint Trial Ex.* 18. Clark, in turn, contracted with Plaintiff State Steel, a company in the business of selling steel, to supply steel for the construction of the buildings. *Tr. 5/6/08* at 99-101. This dispute arises out of non-payment for the steel provided by Plaintiff that was incorporated into Defendants' buildings at the A & M Composting facility.

### B.    Witness Credibility

---

[6] The following findings are made upon consideration of the evidence offered at trial in the form of witness testimony and the parties Joint Trial Exhibits 1-25, as well as the admitted exhibits of Plaintiff and Defendants. (*See Trial Exhibit List*, Docket No. 121-3).

1. *Solomon Wansor - President and C.E.O. of Clark Building Systems, Inc.*

Clark Building Systems, Inc. is a named defendant in this matter but, to date, no attorney has entered an appearance on its behalf and Clark has not attempted to defend this action in any manner. Despite this fact, Solomon Wansor testified at trial as a witness for Plaintiff State Steel. *See Tr. 5/5/08* at . He was the former President and Chief Executive Officer of Clark Building Systems, Inc., a company that manufactured pre-engineered metal buildings, which he founded in 1989. *Tr. 5/5/08* at 61. Wansor testified that Clark went bankrupt and is no longer in existence. *Tr. 5/5/08* at 73-74. During his testimony at trial, Wansor alleged several times that Defendants had caused Clark, and specifically, he and his sons, to go bankrupt. *Tr. 5/5/08* at 70, 74. Having reviewed the trial record and observed Wansor's demeanor as he offered testimony at trial, the Court finds that Wansor has a bias against Defendants given his allegations and the fact that his company remains a defendant in this matter. In addition, the Court did not find him to be a credible witness. *Tr. 5/6/08* at 172-173.

2. *Jeffrey Smith - Secretary and Treasurer of Clark Building Systems, Inc.*

Jeffrey Smith also testified for Plaintiff pursuant to a subpoena and was paid a witness fee. *Tr. 5/6/08* at 64. He was the former Secretary and Treasurer at Clark. Smith worked at Clark from the time he graduated college in 1995 until it closed in 2005. *Tr. 5/5/08* at 124. He had formerly worked at Clark while he was in college where he obtained a degree in business administration finance. *Tr. 5/5/08* at 124-125. His job duties steadily enlarged until the point where he became Secretary and Treasurer. As Treasurer, Smith only paid Clark's suppliers upon the approval of its owner, Wansor. *Tr. 5/6/08* at 11. Smith also has a familial relationship to Wansor, as he is the brother-in-law to Wansor's son. *Tr. 5/5/08* at 62. (As indicated in several of the admitted exhibits

in this case, Wansor's sons were involved with Clark, which appears to have been a family business. Smith also testified that he was not aware of the status of Clark's bankruptcy. *Tr. 5/6/08* at 64.) The Court found that portions of Smith's testimony which directly contradicted evidence of record lacked credibility, including his testimony that he was not aware of the contractual agreement between Clark and Defendants, yet he had signed the document as a witness to its execution.

3.      *William F. Fox, Jr., Esq. - General Counsel of Defendants*

Plaintiff also offered the testimony of William F. Fox, Jr., Esq., General Counsel for Defendants American Compost Corporation, A & M Composting and Solid Waste Services, Inc., doing business as J.P. Mascaro & Sons, as if on cross examination. *Tr. 5/6/08* at 66. Fox was admitted to practice law in Pennsylvania in 1975 and has served in the General Counsel role for Defendants since October of 1990. *Id*. He testified that Defendants are his sole source of income, but has no equity interest in the companies. *Tr. 5/6/08* at 84. The Court found Fox's testimony to be credible.[7]

4.      *Adrienne Berg (formerly Chizek) - President and Owner, State Steel Supply*

The last witness to testify in Plaintiff's case was Adrienne Berg (formerly Chizek) the owner

---

[7]

Plaintiff argues "that the credibility and believability of Fox should also be scrutinized because of his attempt during his trial testimony to alter, not just clarify, his deposition testimony" regarding whether the $280,000 in payments made by Defendants to Plaintiff were made pursuant to the May 26, 2004 letter. (Docket No. 133). At his deposition, Fox testified that Defendants made $280,000 in payments pursuant to the letter. *Id*. However, at trial, he asserted that his deposition testimony was not an accurate statement, explaining that the initial $100,000 payment was made prior to the letter. *Tr. 5/6/08* at 73. The evidence at trial demonstrated that the $100,000 payment was made on May 7, 2004, prior to the writing of the May 26, 2004 letter by Fox. Further, the parties' Joint Trial Stipulations reflect the same chronological sequence of the payments and the letter. (Docket No. 113 at ¶¶ 5-8). Accordingly, the Court credits Fox's testimony at trial, as his testimony at his deposition was clearly inaccurate.

and President of Plaintiff State Steel, a company in the business of selling steel. *Tr. 5/6/08* at 100. She testified that she started the business in 1989. *Tr. 5/6/08* at 100. Berg testified that she had one year of college education and that prior to starting the business she was a housewife. *Tr. 5/6/08* at 136. Prior to this lawsuit, Clark had been a customer of Plaintiff for 10-12 years while Defendants had never been customers of Plaintiff. *Tr. 5/6/08* at 116-117. Aside from the lawsuit, Plaintiff did not file any other claims against Clark relating to the payment of the invoices. *Tr. 5/6/08* at 135. The only attempts at recovering these sums due and owing from Clark were by calling Clark and requesting that money be sent. *Tr. 5/6/08* at 135. Finally, aside from counsel representing Plaintiff in this action, Plaintiff did not have legal assistance in any attempt to recover this debt. *Id.* Except for an important discrepancy further detailed below, the Court found Berg's testimony to be credible. However, the Court also recognizes that given Berg's role as principal of Plaintiff, she has an inherent bias against Defendants.

### C. Contractual Agreement between Clark and Mascaro Defendant A & M Composting

One of the Defendants, A & M Composting, and Clark entered into a written agreement dated April 14, 2004 entitled "Contract for Purchase of Fabricated Steel Buildings." *Joint Trial Ex.* 13 at 1. The agreement was drafted by Defendants' general counsel, William F. Fox, Jr. *Tr. 5/6/08* at 66-67, 92. The agreement was signed by Defendants' President Pat Mascaro and General Counsel Fox on behalf of A & M, and for Clark by its President, Wansor, and Secretary and Treasurer, Smith.[8] *Joint Trial Ex.* 13 at 9; *Tr. 5/5/08* at 61-62. Pursuant to that agreement, A & M Composting agreed

---

[8] The Court notes that, as recognized on the record at trial, Mr. Smith's credibility is in question as he testified that he was not involved in the initial contract signing and that he could not remember the first time that he saw the agreement but the document itself is clear that Smith had signed as a witness to the execution of the agreement. *Tr. 5/6/08* at 13-14.

to purchase and Clark agreed to manufacture and sell three fabricated steel buildings including: "a steel frame sheeted main building"; "an insulated office building"; and, "a sludge unloading building plus a covered runway and shed." *Joint Trial Ex*. 13 at ¶ 1.  While Clark agreed to fabricate and sell the three buildings to A & M Composting, Clark was not responsible for any of the following: erecting the buildings, galvanizing any of the buildings' components or providing A & M with the anchor bolts required for the project, each of which was to be provided or performed by a third party. *Id*. at ¶¶ 3-5.  The total purchase price for the project was $2,418,476.00, including a base price of $2,363.876.00 for the project buildings and a freight charge of $54,600.00.  *Id*. at ¶ 6.  The purchase price was to be paid by A & M according to the following schedule:

| | | |
|---|---|---|
| ● | an initial down payment upon the signing of this Contract | $    90,000.00 |
| ● | a second down payment within 7 days after the signing of this Contract | $  507,619.00 |
| ● | the balance of the Purchase Price to be paid pursuant to phased delivery invoices | <u>$1,820,857.00</u> |
| ● | total purchase price | $2,418,476.00 |

*Id*. at ¶ 6.

The total purchase price of $2,418,476.00 to be paid by A & M under the agreement was "a fixed and firm price" which would "not be increased or decreased because of fluctuations, if any, in Clark's raw material costs."  *Id*.  The agreement includes only the aforementioned total purchase price and does not specify any itemized costs for the project components, including steel.  After the initial down payment of $90,000 was made by A & M to Clark, a second down payment of $507,619.00 was to be deposited in a joint checking account in the names of Clark and A & M Composting and "[t]he money in this account [was] to be used to pay suppliers of the raw materials

necessary for Clark to fabricate the Project Buildings." *Id*. The Project Buildings were "to be delivered by Clark in phased segments in accordance with the delivery sequence and schedule" and after delivery, Clark was to invoice A & M with a proportionate phased invoice of the remaining balance of $1,820,857.00 based on the components of the buildings that were delivered. *Id*. at ¶ 7. Further, "A & M [agreed] to pay each phase invoice within seven days of delivery for those Project Building components delivered without defect," except for a ten percent (10%) retainage fee which would be withheld by A & M from each phase invoice. *Id*. These retained sums were to be paid to Clark within ten (10) days of the final and satisfactory delivery of each component of the Project Buildings. *Id*.

The agreement further provided that Clark would use the highest degree of care in meeting the phased delivery time schedule and that Clark understood and agreed that time was of the essence in the performance of the contract as A & M was unable to re-open its "compost facility business operations until the Project Buildings [were] fabricated and delivered by Clark and thereafter erected by a third party contractor chosen by A & M." *Id*. at ¶¶ 9, 14. Finally, the agreement provided that Clark had made the necessary arrangements to secure the raw materials needed for the fabrication of the Project Buildings and that the unavailability of raw materials would not constitute a force majeure justifying a delay in the delivery time schedule. *Id*. at ¶ 9.

D.    Agreement and Transactions between Clark and Plaintiff

After contracting with A & M to fabricate the buildings, Clark reached an agreement with Plaintiff to supply steel for the job. *Tr. 5/5/08* at 71, 125-127; *Tr. 5/6/08* at 99-102; *Joint Trial Ex. 1*. Clark chose Plaintiff because of all the steel suppliers with which they had spoken, Plaintiff had the lowest price. *Tr. 5/5/08* at 126. Plaintiff and Clark had maintained an amicable business

relationship for 10 to 12 years during which Plaintiff supplied steel to Clark. *Tr. 5/6/08* at 100-118.

Plaintiff considered Clark a good customer other than that they were "slow" to pay on occasion. *Tr. 5/6/08* at 118. (The contractual agreement, if any, between these parties was not entered into evidence at the bench trial.) Defendants were not customers of Plaintiff State Steel. *Tr. 5/6/08* at 116-117. Plaintiff supplied the steel required to fabricate the A & M Composting facility buildings to Clark at its manufacturing facility pursuant to a series of purchase orders. *Joint Trial Ex.* 1.

The parties stipulated to the admission of Joint Trial Exhibit 1, a series of purchase orders with a summary exhibit entitled "State Steel Supply to Clark Building" which provides that Plaintiff provided the following invoices to Clark:

| Invoice Date | Invoice Number | Invoice [Amount] |
| --- | --- | --- |
| 05/17/2004 | 23605 | 18,642.60 |
| 05/19/2004 | 23606 | 20,958.30 |
| 05/20/2004 | 23607 | 20,057.40 |
| 05/24/2004 | 23608 | 18,805.95 |
| 05/24/2004 | 23609 | 14,956.20 |
| 05/27/2004 | 23610 | 19,708.65 |
| 05/28/2004 | 23611 | 18,955.35 |
| 06/02/2004 | 23612 | 18,418.50 |
| 06/04/2004 | 23613 | 17,823.60 |
| 06/07/2004 | 23614 | 18,994.05 |
| 06/08/2004 | 23615 | 19,913.40 |
| 06/08/2004 | 23617 | 19,720.80 |
| 06/10/2004 | 23619 | 19,260.00 |
| 06/16/2004 | 23623 | 19,693.80 |
| 06/16/2004 | 23624 | 19,132.65 |
| 06/28/2004 | 23627 | 17,616.15 |
| 07/09/2004 | 23636 | 21,038.40 |
| 09/08/2004 | 23655 | 20,347.20 |
| 09/08/2004 | 23656 | 21,697.20 |
| 09/24/2004 | 23660 | 21,383.55 |
| 09/28/2004 | 23661 | 15,272.55 |
| 10/05/2004 | 23662 | 20,307.60 |
| 10/06/2004 | 23663 | 19.607.40 |
| 10/07/2004 | 23664 | 16,141.50 |

| 10/20/2004 | 23669 | 12,219.30 |
|---|---|---|
| 11/03/2004 | 23670 | 8,865.00 |
| 11/19/2004 | 23672 | <u>10,365.05</u> |
| | | |
| Total Invoice Amount | | $489,902.15 |

*Joint Trial Ex.* 1. Each shipment of steel by Plaintiff was delivered directly to Clark's manufacturing yard. *Tr. 5/6/08* at 116-117. In addition, Plaintiff sent invoices for all deliveries to Clark on or around the date each load was shipped. *Tr. 5/6/08* at 109, 111; *Joint Trial Ex.* 1. Each of the invoices provided that payment was to be made by Clark under terms of "1/2 10-Net 30."[9] *Joint Trial Ex.* 1; *Tr. 5/5/08* at 64.

E.   <u>Initial Payments by Defendants</u>

Pursuant to their Agreement, Defendants made an initial down payment of $90,000 to Clark at the contract's signing on April 14, 2004. *Joint Trial Ex.* 25; *Tr. 5/5/08* at 91-92; *Tr. 5/6/08* at 15-16, 75 and 91-92. Following this down payment, Defendants made a second payment of $507,619 into a joint account held by Defendants and Clark ("joint checking account") for the purpose of paying Clarks' material suppliers. *Tr. 5/5/08* at 91-92; *Tr. 5/6/08* at 15-16, 75; *Joint Trial Exs.* 13, 25. Fox testified that this second down payment was late because Clark had failed to return the signature card needed to open the account. *Tr. 5/6/08* at 69-70, 92-93; *Plaintiff's Ex.* 5.

On April 23, 2004, EBC, a company that had contracted with Clark to "provide purlins, roofing and siding materials" for the A & M Composting facility project, was paid $110,000 from

---

[9]

The Court understands the payment term of 1/2 10 - Net 30 to mean that Clark was to pay the full invoice amount within 30 days of receipt of the Purchase Order, or alternatively, could receive a 1/2% discount of the invoice amount if payment was made within 10 days.

a check drawn on the joint checking account.[10]  *Tr. 5/5/08* at 79-80; *Joint Trial Ex.* 15.  Wansor testified at trial that he wrote to EBC and directed EBC to apply certain proceeds of these funds to accounts not related to the A & M Composting facility project or the April 14, 2004 agreement with Defendants.  *Tr. 5/5/08* at 79-80.  The aforementioned letter stated that "[o]n April 23, 2004, Clark Building Systems, Inc. gave E.B.C. a check for $110,000.00.  Of that money, Clark has used approximately $53,000.00 with about $57,000.00 left in the account.  Please use the money in the account to pay for the following projects: Utopia - $21,408.00; Housel - $7,681.00; Creps - $11,527.00."  *Defendants' Ex.* 3.  Wansor further testified that EBC was so directed because once Clark accepted the A & M Composting facility project, EBC was not able to finish the other jobs that it had in-house, so the money was used for other projects and then upon delivery the money went back to the A & M Composting facility project.  *Tr. 5/5/08* at 79-80.  Smith testified that he was not aware that Wansor sent the April 23, 2004 letter or that EBC was directed to apply the funds to accounts other than Defendants'.  *Tr. 5/6/08* at 26.

Likewise, on May 7, 2004, Plaintiff was paid $100,000 from a check drawn on the joint checking account.  *Tr. 5/6/08* at 71, 82; *Joint Trial Ex.* 23 at 1-2; *Joint Trial Ex.* 24.  This payment was made in order to hold the price of steel for the Project Buildings at the A & M Composting facility.  *Id.*  Plaintiff required this down payment prior to shipping any steel material because Clark did not have sufficient creditworthiness to be granted credit by Plaintiff for approximately half a million dollars as was the value of the order.  *Tr. 5/6/08* at 104:13-20.  Of this $100,000, Berg testified that she was directed by Clark to apply $5,300 of this deposit to an unpaid balance that

---

[10]

As noted above, EBC was initially a Plaintiff in this action, but has since voluntarily dismissed its claims against Defendants.

Clark owed Plaintiff from another job. *Tr. 5/6/08* at 101. Smith testified that he was not aware that Plaintiff was directed to or had, in fact, applied these funds to a job other than Defendants'. *Tr. 5/6/08* at 29.

Wansor initially testified at trial that at the time that the contract between Clark and Defendants was executed (April 14, 2004), Clark was not indebted to EBC and Plaintiff State Steel. *Tr. 5/5/08* at 75. Considering the conflict between this testimony, the letter Wansor sent to EBC as well as the testimony of Berg, the Court resolves the factual issues and discredits the initial testimony of Wansor on this issue. *See Parker*, 534 F.Supp.2d at 535-536 (permitting the Court to assess the credibility of witnesses while resolving factual disputes). Accordingly, the Court finds that Clark had debts to both EBC and Plaintiff as of April 14, 2004.

F.    Fox Letter of May 26, 2004

By letter dated May 26, 2004, William F. Fox, Jr., Esquire, General Counsel for Mascaro, wrote the following to State Steel. (Docket No. 113, *Joint Trial Stipulations* at ¶ 6).

May 26, 2004

Ms. Adrienne Chizek
**State Steel Supply**
30799 Pinetree Road
PMB 412 Cleveland, OH 44124

**Re:    Your Contract with Clark Building Systems, Inc. For Web Materials for Further Processing by Clark**

I am General Counsel for Solid Waste Services, Inc. d/b/a J.P. Mascaro & Sons and its affiliated companies ("Mascaro") one of which is A&M Composting, Inc., the owner of the A&M Composting facility in Lancaster County, Pennsylvania.

Mascaro is a large regional company headquartered in

Montgomery County, Pennsylvania, that engages in the collection, recycling, processing, transportation, disposal and composting of solid waste. Mascaro has been in business for 35 years, it competes successfully with the national waste companies, it has strong, long-term bonding and banking relationships and it is rated 5-A-1 by Dunn & Bradstreet.

Mascaro has contracted with Clark Building Systems, Inc. to provide a large fabricated steel building (i.e. approximately 465,000 square feet) related to the reconstruction of the A&M Compost facility. Clark has previous experience in providing this type of building to Mascaro, the last of which was a 250,000 square foot fabricated building for use at Mascaro's Wetzel County Compost facility in 2002.

We understand that Clark has contracted with your company to provide web materials for the A&M reconstruction project. We also understand that the amount of their contract with your company is approximately $450,000 and that Clark has made a substantial down payment to your company.

I am writing to advise you that under our contract with Clark, we make payment to Clark within seven days of the building material delivery for each completed phase, without defect, to our site. With respect to any balance that Clark may owe your company for web materials, our company is willing, with Clark's permission, to pay you directly or by joint check made payable to Clark and your company within the seven day period, as long as our payment is credited by Clark against the amount due under our contract with Clark. It is our understanding that Clark is agreeable to this arrangement.

I am providing a copy of this letter to Sol Wansor and Jeff Smith, the President and Controller of Clark, and if you have any questions, please feel free to contact either of them or me.

Thank you for your consideration of this matter.

Very Truly Yours,

s/William F. Fox, Jr.
William F. Fox, Jr.

CC:    Sol Wansor, Clark Building Systems
       Jeff Smith, Clark Building Systems
       Pat Mascaro
       David C. Brown, P.E.
       Bob Clark

*Joint Trial Ex.* 14.

Fox testified that this letter was written upon the request of Clark and that he was directed as to what language to include in the letter by Clark, including the $450,000 value of its contract with Plaintiff. *Tr. 5/6/08* at 82-83, 97. He further testified that he did not know anything about Plaintiff until around the time that he drafted the letter. *Tr. 5/6/08* at 96-97. Fox added that he agreed to draft the letter on behalf of Defendants because Defendants did not have a preference as to whether payments were made to Clark or directly to its suppliers, as long as the contract price between Defendants and Clark was honored. *Tr. 5/6/08* at 83. Fox also sent a similar letter to two of Clark's other suppliers, EBC, Inc. and Youngstown Pipe and Supply. *Joint Trial Exs.* 3 and 4; *Tr. 5/6/08* at 76-77.

Plaintiff State Steel's President, Adrienne Berg, received the May 26, 2004 letter from Fox and testified as to the same. At trial, Berg confirmed that Defendants had never been customers of Plaintiff. *Tr. 5/6/08* at 118. She also testified that she did not write to or attempt to contact Fox to inquire as to his or Defendants' interpretation of the letter. *Tr. 5/6/08* at 118. As to her interpretation of Fox's letter, Berg testified at trial that she interpreted Fox's letter to mean that Plaintiff would be paid and that Defendants were a large company which could handle the payments. *Tr. 5/6/08* at 108. She further testified at trial that the letter made Plaintiff feel comfortable that it would receive payment and that it could continue shipping steel for the project after the $100,000

down payment had run out. *Id.* Berg also testified regarding conversations that she had with Defendants' representatives following her receipt of Fox's letter, and that Plaintiff relied on this letter and subsequent conversations with Fox in deciding to continue shipping steel for the completion of the Project Buildings. *Tr. 5/6/08* at 104-105. She testified that around the time that the May 26, 2004 letter was sent to Plaintiff, that Plaintiff's credit manager ran a credit check which determined that Defendants were a sound company. *Tr. 5/6/08* at 105. She further testified that the credit manager had a conversation with either Bill Fox or Bob Clark (Controller) of Defendants which gave Plaintiff "a comfortable feeling that we would be okay with them and that we could continue on shipping." *Tr. 5/6/08* at 105. On cross examination, Berg was impeached by defense counsel with her earlier deposition testimony. At her deposition on December 13, 2006, she testified that she did not know why Fox sent the letter nor did she request that he send such a letter. *Tr. 5/6/08* at 120-122. She testified at the deposition that, even after receiving the letter, that she still believed that payment for the steel Plaintiff supplied would come from Clark and that she would not be billing Defendants for such steel. *Tr. 5/6/08* at 120-122, 124 and 134. She answered in the negative when questioned as to whether she believed that Plaintiff would be paid by Defendants if they had paid the full value of their contract price with Clark. *Tr. 5/6/08* at 129-130. As noted at trial, the Court finds that Berg's trial testimony conflicts with her earlier deposition testimony regarding her interpretation of the May 26, 2004 letter. The Court credits her earlier deposition testimony as closer to the events at issue.

G.     Payments By Defendants to Clark and its Subcontractors

It is undisputed that Defendants made three payments directly to State Steel, for a total of $280,000. (Docket No. 113 at ¶ 9); *Joint Trial Ex.* 25. An initial payment of $100,000 was made

20

on May 7, 2008 and was drawn from the joint checking account. Such payment was made in order to hold the price of steel for the Project Buildings at the A & M Composting facility. *Joint Trial Exs.* 1, 23, 24; *Tr. 5/6/08* at 71, 82. On August 4, 2004, Clark sent a request to Defendants for payment of $90,000 to be sent to Plaintiff. *Joint Trial Ex.* 6. Smith testified that this request was sent because there was a lot of steel material on the ground at Clark's stockyard that was to be included in the project but that Plaintiff had yet to be paid. *Tr. 5/6/08* at 5-6. Berg testified that this payment was made after she had told Smith at Clark that Plaintiff "needed money to continue shipping." *Tr. 5/6/08* at 111. After receiving Clark's request, Defendants issued a check for $90,000 to Plaintiff on August 5, 2008. (Docket No. 113 at ¶ 7). Fox testified that the August 5, 2004 payment was made directly to Plaintiff at Clark's request, and was to be deducted from the Phase 1 balance owed to Clark by Defendants under their agreement. *Tr. 5/6/08* at 71, 82; *Joint Trial Exs.* 23, 25. The Court finds Fox's testimony credible as it comports with the testimony and documentary evidence of record. On September 24, 2004, Smith sent a letter to the attention of Dave Brown and Robert Clark (employees of Defendants) requesting that payment be sent by Defendants to Plaintiff. *Joint Trial Ex.* 23. In the letter, Smith stated that "I do not have an invoice for State Steel Supply, but they will require a $90,000.00 payment to continue in Phase 3." *Joint Trial Ex.* 23. The letter further indicated that the $90,000 payment, as well as a referenced payment to subcontractor Triad, were to be deducted from Defendants' Phase 3 payment. *Id*. This letter was sent by Smith because there was an extraordinary amount of steel material on the ground at Clark's stockyard. *Tr. 5/6/08* at 6-7. Defendants issued a check to Plaintiff on September 27, 2004 in the amount of $90,000. (Docket No. 113 at ¶ 8). With respect to this payment, Fox testified that it was made after Jeff Smith of Clark directed Defendants to pay Plaintiff directly, with the understanding that the $90,000 would be

deducted from the Phase 3 payment owed to Clark under their Agreement. *Tr. 5/6/08* at 71, 82; *Joint Trial Exs*. 23, 25.

      H.     <u>Logistics of Clark's Steel Purchases from Plaintiff</u>

The logistics involved with the steel purchases involved the following. Clark would order the steel from Plaintiff. A bill of lading would be faxed by Plaintiff to Clark and Plaintiff would later mail invoices to Clark. Plaintiff never sent any of its invoices or steel shipments directly to Defendants. *Tr. 5/6/08* at 116-117. Each shipment was made to Clark's facility yard. *Tr. 5/6/08* at 116-117. On direct examination, Wansor testified that he did not know whether Plaintiff's invoices were sent directly to Defendants. *Tr. 5/5/08* at 73. Wansor testified that Jeff Smith, Secretary and Treasurer of Clark, would have that responsibility and that he "didn't get involved with the invoices." *Tr. 5/5/08* at 73, 109. He had also testified at his deposition that he "couldn't guarantee" that Plaintiff's invoices were sent to Defendants and that he did not believe that they all were. *Tr. 5/5/08* at 119-120. Smith testified that he sent Plaintiff's invoices to Defendants. *Tr. 5/6/08* at 15. Fox testified, however, that Defendants never received any of Plaintiff's invoices. *Tr. 5/6/08* at 82. As previously stated, the initial $100,000.00 payment was a down payment to hold prices and was made prior to any steel being shipped or corresponding invoices being submitted to Defendants. *Tr. 5/6/08* at 88. In addition, neither the August 4, 2004 fax nor the September 24, 2004 letter of Smith to Defendants requesting payment state that Plaintiff's invoices would be forwarded to Defendants. *Joint Trial Ex.* 23. In fact, the September 24, 2004 letter specifically states that Clark had no invoices in support of that request for payment. *Id.* Accordingly, after reviewing the evidence at trial, the Court resolves this factual dispute and finds that Plaintiff's invoices were never forwarded to Defendants by Clark.

Smith and Wansor both testified that State Steel's deliveries to Clark were only used by Clark for the A & M Compositing facility project. *Tr. 5/5/08* at 122-123, 145. After receipt of the steel material by Clark at its stockyard, Clark would fabricate the steel into prefabricated steel pieces. *Tr. 5/6/08* at 62. The steel pieces would then be galvanized at a galvanizing plant. *Id.* After the galvanizing was completed, the prefabricated and galvanized steel pieces would be delivered to Defendants. *Id.* Accordingly, each shipment of steel which originated from Plaintiff would be delivered to Clark and an entity that performed galvanizing services prior to being delivered to Defendants.

      I.      <u>Clark Falls Behind Schedule/Contract Change Order</u>

As fabrication of the Project Buildings progressed, Clark fell behind schedule regarding the delivery of building components stipulated in the Fabrication Contract, and Defendants sent several letters to Clark regarding the delay. *Joint Trial Exs*. 16, 18. In a memorandum dated June 3, 2004, Defendants' Director of Engineering, Dave Brown, wrote to John Minger and Ray Roberts of Clark summarizing a fabrication and delivery schedule of the 600' x 780' building for the period between June and October of 2004. *Joint Trial Ex.* 16. Clark fell behind schedule on several of these deadlines and in a July 19, 2004 letter, Defendants' Director of Engineering, David C. Brown, wrote to Wansor describing problems that Clark had with meeting the deadlines for the project. *Joint Trial Ex.* 16. Brown suggests in the letter that "[o]ne solution is to subcontract part of the fabrication" and requests that Clark advise Defendants of "what steps Clark is going to take to increase the fabrication rate in order to honor the October 2, 2004 completion date." *Joint Trial Ex.* 16. Wansor testified that he did not recall receiving these letters from Dave Brown, but in a July 20, 2004 letter, Wansor clearly responded to Dave Brown's letter of July 19, 2004. Accordingly, the Court discredits

Wansor's testimony that the letters were not received by Clark. In his response, Wansor wrote to Dave Brown that the deadlines in his letter would be met, stating that "[t]he shop is now working 6 days a week [at] 10 hours per day for two shifts" and that the "[c]ompletion date should be okay." *Joint Trial Ex.* 17.

Fox also wrote to Wansor regarding the delays. In a September 2, 2004 letter, Fox wrote to Wansor "following up on Mr. Brown's letters of August 14 and September 2, 2004 regarding your company's serious failure to adhere to the delivery and completion schedule concerning the project buildings that you are fabricating in connection with our A&M Composting facility." *Joint Trial Ex.* 18. Fox further wrote that Clark was aware that timing deadlines were critical to the project, highlighting Defendants' $200,000,000.00 government contract for composting, which was secured with a $28,000,000.00 performance bond. *Id*. The letter also advises Clark of the financial and legal ramifications for Clark if it was unable to meet its obligations under the April 14, 2004 contract and requests that Clark advise Defendants in writing as to how Clark intended to meet these obligations. *Id*.

In order to mitigate the damages resulting from Clark's delay, Defendants and Clark engaged mitigation subcontractors, T. Bruce Campbell and Extreme Machine Fabrication, to perform work that Clark had initially contracted to perform. *See Joint Trial Exs.* 21, 22. In a September 27, 2004 letter, Fox wrote to Wansor at Clark: "[t]o mitigate the damage caused by the delay in the completion of the [April 14, 2004 Contract for Purchase of Fabricated Steel Buildings], American Compost Corporation will be paying directly to the new fabrication subcontractors retained and being utilized by Clark Building Systems, Inc. the increased cost associated with the work now being performed by the subcontractors instead of Clark." *Joint Trial Ex.* 21. In another letter dated September 30,

2004, Fox wrote to Wansor identifying the mitigation subcontractors as T. Bruce Cambell and Extreme Machine & Fabrication, describing the work needed to be completed by such subcontractors, and the estimated extra project costs associated with their engagements. *Joint Trial Ex.* 22. Those costs were estimated to increase the base contract price from $2,418,476.00 to $2,537,935.22. *Id*.

On October 7, 2004, Fox wrote the following to Wansor, "[a]s a follow up to earlier correspondences [sic], I have executed your form Change Order regarding the subcontractors that are now performing a portion of your work under the above-referenced contract. As indicated in my earlier letters, we have agreed to pay the subcontractors directly for the work they do." *Joint Trial Ex.* 22 at 1. A Contract Change Order was attached to the October 7, 2004 letter. *Joint Trial Ex.* 22 at 2. The Change Order was dated September 27, 2004, and was signed by S. R. Wansor on behalf of Clark and by William F. Fox, Jr. on behalf of American Compost Corporation. *Joint Trial Ex.* 22 at 2. The date corresponding to Fox's signature indicated that the changes were approved on October 7, 2004. *Joint Trial Ex.* 22 at 2. Wansor testified that it was Clark's typical practice that before any additional costs were to be incurred by Clark, a Change Order was required to be signed. *Tr. 5/5/08* at 115. The Change Order reflected that it was Change Order No. 1 and provided for a Revised Contract Amount which stated the following:

| | |
|---|---|
| Previous Contract Amount | $2,418,476.00 |
| Amount of this Order | $     36,426.76 (2nd Phase) |
| | $     83,032.46  (3rd Phase) |
| Total Contract and Extras | $2,537,935.22 |

*Joint Trial Ex.* 22 at 2. At trial, Wansor testified that he interpreted the October 7, 2004 letter from Fox to mean that its subcontractors would be paid directly. *Tr. 5/5/08* at 114. However, upon

review of the letters, it is clear to the Court that the change order was executed as a result of the increased costs caused by the engagement of the mitigation subcontractors, T. Bruce Campbell and Extreme Machine Fabrication. It is also clear that in their October 7, 2004 letter, Defendants agreed to pay only these mitigation subcontractors directly for the work that they had agreed to perform.

The parties stipulated to the admission of Joint Exhibit 25 at the outset of the trial. *Joint Ex.* 25. That document, entitled "ACC Payments to Clark Building Systems & Various Subs of Clark Building Systems 2004/2005," provides that Defendants made the following payments to Clark and its subcontractors for the project:

| Entity | Payment Amount |
| --- | --- |
| Clark Building System | $730,684.02 |
| EBC | $851,134.86 |
| State Steel Supply | $280,000.00 |
| Triad | $180,715.72 |
| Youngstown Pipe & Supply | $220,935.17 |
| Metals USA | $ 11,346.16 |
| Crowley Trucking | $ 5,111.80 |
| Flexospan Steel Building | $ 82,913.87 |
| Southwest Bolt | $ 5,078.35 |
| Anixer Pentacon | $ 51,007.85 |
| W.D. Kerr & Sons | $ 12,120.00 |
| T. Bruce Sales | $129,092.62 |
| Extreme Machine | $103,052.73 |
| Matt Minner | $ 1,800.00 |
| Chadderton Trucking | $ 15,542.30 |
| Yourga Trucking | $ 8,605.16 |
| MBCI | $ 13,188.39 |
| R.A.M.E. | $ 50,000.00 |
| Total | $2,752,329.00 |

*Joint Trial Ex.* 25. Fox testified that Joint Trial Exhibit 25 was a summary of all the payments made by Defendants for suppliers and subcontractors of the A & M Composting facility project, with the exception of payments made to RAME, which was an erector. *Tr. 5/6/08* at 78. Defendants'

Exhibit 1 in support of Joint Trial Exhibit 33 was also admitted into evidence after Plaintiff did not object to its admission. *Tr. 5/6/08* at 65. (Docket No. 121-3).[11]

J.      Completion of the Project and Additional Correspondence

The project buildings were fabricated and delivered by early January of 2005 and the components were erected by a third party in March of 2005. *Tr. 5/6/08* at 88-89. Clark's portion of the project was therefore completed in early 2005. *Tr. 5/6/08* at 89. Plaintiff supplied Clark with steel that had an invoiced value of $489,902.15 and was paid only $280,000 for the shipments. Plaintiff was never paid the remaining balance due on its invoices.

With respect to payment of the invoices, Smith testified that he believed that Defendants would make direct payments to Plaintiff. *Tr. 5/6/08* at 15. Wansor had the same understanding. *Tr. 5/5/08* at 70. He testified that Pat Mascaro assured him that the suppliers, including Plaintiff and EBC, would be paid at the end of the project by Defendants. *Tr. 5/5/08* at 69-70. However, Wansor sent a series of letters between January and May of 2005 to Defendants' officers requesting financial assistance in the form of funds for overdue payroll taxes and a loan. *Tr. 5/5/08* at 106-107; *Defendants' Exs.* 15, 16 and 17. On January 27, 2005, Wansor wrote to Pat Mascaro, Defendants' President, thanking him for helping Clark through a difficult period and informing Mascaro that had he not helped Clark, Clark would have gone bankrupt. *Defendants' Ex.* 15. In this January 27, 2005 letter to Mascaro, he also asked Mascaro for $78,028.27 to pay the IRS for overdue payroll taxes in exchange for part ownership interest in Clark. *Id.* Similarly, in an April 29, 2005 letter to Dave

---

[11]

While incorrectly marked as an exhibit in support of Joint Trial Exhibit 33, Defendants' Exhibit 1 contains voluminous invoices and other documentation in support of the payments listed on the summary exhibit at Joint Trial Exhibit 25. *Defendants' Ex.* 1.

Brown, Defendants' Director of Engineering, Wansor again requested help with overdue payroll taxes. *Defendants' Ex.* 16. Finally, in a May 16, 2005 letter to Mascaro, Wansor requested a $180,000 loan in exchange for a 20% ownership interest in Clark so that Clark could stay in business. *Defendants' Ex.* 17.

Noticeably absent from each of these letters is any reference to an unpaid balance from Defendants or any allegations that Defendants had not met their obligations under the April 14, 2004 contract. *Tr. 5/5/08* at 106-108; *Defendants' Exs.* 15, 16, 17. During his testimony, Wansor attempted to explain this discrepancy by stating that the amounts owed by Defendants were not included in the letters because Clark "wasn't asked" and further explaining that the company was in dire need of capital and that Defendants owed Clark around $600,000.00 at the time. *Tr. 5/5/08* at 115-116.

Then, on July 11, 2005, Wansor sent Pat Mascaro a letter with a May 2, 2005 attachment drafted by Smith, which addressed an outstanding balance for Clark's work on Defendants' Project Buildings. *Plaintiff's Ex.* 2; *Defendants' Ex.* 18. Smith's May 2, 2005 letter does not specify Defendants as the party with the outstanding balance, but Wansor's July 11, 2005 letter identifies A & M as having an outstanding balance. *Tr. 5/6/08* at 82; *Plaintiff's Ex.* 2; *Defendants' Ex.* 18. Smith testified that he drafted the May 2, 2005 letter and that he believed that the outstanding balance attributed on that document to State Steel Supply was correct because Wansor told him that it was indeed correct. *Tr. 5/6/08* at 61-62.

Fox testified that the May 2, 2005 letter was attached to Wansor's July 11, 2005 letter and that he was directed by Pat Mascaro to respond to the letters. *Tr. 5/6/08* at 82. Fox responded to Wansor with a certified letter dated July 26, 2005 denying that any further sum was owed by

Defendants to Clark or its suppliers. *Tr. 5/6/08* at 82; *Plaintiff's Ex.* 2; *Defendants' Ex.* 18. In said letter, Fox states that Clark breached their agreement and had caused problems, delays and increased costs to Defendants. *Id.* The letter further states that Clark's claims were "unfounded" and that Defendants had "no responsibility or obligation, whatsoever, for the sums referred to in that letter." *Id.*

## IV. CONCLUSIONS OF LAW

At the outset, the Court notes that the parties do not dispute the applicability of Pennsylvania law to this diversity action and the same has been consistently applied throughout this litigation. Accordingly, the Court need not engage in a choice of law analysis. Pending before this Court are Plaintiff's motion for reconsideration of this Court's Memorandum Opinion and Order dismissing its breach of contract claim and Defendants' motions for judgment on partial findings under Rule 52(c) on Plaintiff's claims of unjust enrichment and fraudulent misrepresentation. Again, as the Court sits as trier of fact, it will resolve all factual disputes and make credibility determinations. *See Parker*, 534 F.Supp.2d at 536. The Court will address each of the parties' motions, in turn.

### A. Breach of Contract

In Plaintiff's oral motion for reconsideration of its breach of contract claim, Plaintiff requests that the Court review the evidence presented at trial, including the May 26, 2004 letter of Bill Fox to State Steel and the testimony of Fox and Berg, to determine whether it has met the required elements of its breach of contract claim. *Tr. 5/6/08* at 137:23-138:17. At trial, the Court stated that it was "inclined to ... deny[ ] the motion for reconsideration" and ordered a briefing schedule on the motions. *Tr. 5/6/08* at 173:3-10. Despite the Court's Order regarding said motions, Plaintiff's papers do not address its motion for reconsideration and, likewise, Defendants have not briefed the

motion. Accordingly, Plaintiff's motion for reconsideration may be denied for failure to comply with the Court's Order.[12] However, for completeness, the Court will address the merits of Plaintiff's argument as set forth at the conclusion of its case-in-chief at trial.

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp., v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985). Such a motion should only be granted "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Plaintiff argues that the May 26, 2004 letter from Fox to Plaintiff constitutes a contract that obligated Defendants to pay Plaintiff for the steel invoices at issue and that the evidence of record at trial supports such a finding. As stated in this Court's Memorandum Opinion, under Pennsylvania law, a contract is formed between parties if the parties: (1) reach a mutual understanding; (2)

---

[12]

The Court questions whether Plaintiff has abandoned or withdrawn its motion for reconsideration at this stage given the Court's Order and Plaintiff's failure to respond. *See* R. Hunter, Federal Trial Handbook-Civil § 7:2 (4th ed. 2008) (citing Am. Jur. 2d, Motions, Rules, and Orders § 32) ("Where it is incumbent upon the proponent of a motion to proceed with the motion, failure to do so may result in the motion being considered abandoned. A motion also may be presumed abandoned where no ruling has been made on it, at least where there are no circumstances indicating otherwise, or where the movant otherwise acts in a manner which is not consistent with the object of the motion."); *see also Salkeld v. Tennis*, 248 Fed. Appx. 341 (3d Cir. 2007)(non-precedential)(affirming district court's order that plaintiff's motion for a temporary restraining order was deemed withdrawn for failure to file a supporting brief as required by local rule of the Middle District of Pennsylvania).

exchange consideration; and (3) delineate the terms of the bargain with sufficient clarity. (Docket No. 70 (citing *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003))). This Court previously granted summary judgment in favor of Defendants on Plaintiff's breach of contract claim, holding that Plaintiff had failed to prove the first element, i.e., that the parties had reached a mutual understanding that a contract was formed. (Docket No. 70 at 6-11). In so holding, the Court relied on deposition testimony given by Plaintiff's President Berg, that she did not know why the letter was sent, did not believe that Plaintiff would be billing Defendants directly for the steel purchases, and that Plaintiff did not expect to be paid by Defendants for any amount in excess of Defendants' agreement with Clark. *Id*. The Court further found that Berg's deposition testimony and the record before it lacked any evidence of outward manifestations by Plaintiff to Defendants to create such a contractual relationship. *Id*.

At trial, Berg was the only representative of Plaintiff that offered testimony. (*See* Docket Nos. 122, 123). She testified that after receipt of the letter from Fox, there was no further written correspondence between Plaintiff and Defendants. She further testified that Plaintiff continued to ship steel to Clark after receipt of the May 26, 2004 letter because she believed that Defendants were good companies and could handle the payments for steel. Berg was then impeached with her earlier deposition testimony as described above, which the Court found to conflict with her trial testimony. The Court credits Berg's earlier deposition testimony and, again, finds that Plaintiff has not demonstrated that the parties reached a mutual understanding that a contract was formed by the May 26, 2004 letter. Accordingly, as Plaintiff has failed to set forth any new evidence or established any clear error of law or fact which would support its motion for reconsideration, said motion is DENIED.

B.     <u>Unjust Enrichment</u>

Defendants have moved for judgment under Rule 52(c) of the Federal Rules of Civil Procedure as to Plaintiff's unjust enrichment claim.  Their argument at this stage is identical to that set forth in their earlier motion for summary judgment, again relying on the decision of the Superior Court of Pennsylvania in *Meyers Plumbing and Heating Supply Co. v. West End Federal Savings & Loan Association*, 498 A.2d 966 (Pa. Super 1985).[13]  (Docket No. 129).  Defendants argue that they paid Clark Building Systems and its subcontractors an amount in excess of the contract price set forth in their agreement with Clark, and that it would be inequitable for this Court to require Defendants to pay twice for the same goods.  *Id.*  Similarly, Plaintiff again argues that Defendants have been unjustly enriched, as the May 26, 2004 letter from Fox to State Steel obligated Defendants to pay Plaintiff directly for any steel it provided to Clark which ultimately was used in the A & M Composting facility.  (Docket No. 125).  This Court denied Defendants' motion for summary judgment, finding that genuine issues of material fact existed as to whether Defendants had paid the full contract price owed to Clark under their agreement. (Docket No. 70).

As stated in this Court's earlier Memorandum Opinion, under Pennsylvania law, a party is entitled to recovery under the equitable doctrine of unjust enrichment where: 1) benefits were conferred on one party by another party; 2) such benefits are appreciated by the recipient; and 3) it would be inequitable for the recipient, under the circumstances, to accept and retain those benefits without payment of value. (Docket No. 70 (citing *Lauren W. ex rel. Jean W. V. Deflaminis*, 480 F.3d 259, 277 (3d Cir. 2007) (citing *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d

---

[13]

The Court notes that the Court's earlier Memorandum Opinion incorrectly identifies *Meyers* as a 1965 decision of the Supreme Court of Pennsylvania.

Cir. 2000)))); *see also Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008)(citing *Limbach Co. LLC v. City of Philadelphia*, 905 A.2d 567, 575 (Pa.Commw.Ct. 2006)). A party cannot recover under a theory of unjust enrichment if the parties' relationship is governed by a written contractual agreement. *Curley v. Allstate Ins. Co.*, 289 F.Supp.2d 614, 619-620 (E.D.Pa., 2003) (citing *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969); *Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co.,* 44 A.2d 571, 574 (Pa. 1945)). "[A] claim in quantum meruit for unjust enrichment is, by nature, fact-sensitive. The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." *Limbach*, 905 A.2d at 577 (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203-1204 (Pa.Super. 1999). Moreover, the passive receipt of a benefit under circumstances where it would be unconscionable for the Defendants to keep such benefits without payment is enough to sustain such a claim. *See Ankerstjerne v. Schlumberger Ltd.*, Civ. A. No. 03-3607, 2004 WL 1068806, at *6 (E.D. Pa. May 12, 2004) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d. Cir.1987)); *see also Comcast Spectacor L.P. v. Chubb & Son, Inc.*, Civ. A. No. 05-1507, 2006 WL 2302686, *23 (E.D. Pa. 2006) (citing *Hershey Foods*, 828 F.2d at 999) (providing that the doctrine of unjust enrichment addresses situations where one party received a benefit that would be unconscionable to retain without compensating the provider)). Further, "[a] necessary element of unjust enrichment is that a benefit must have been conferred for which no compensation was given. In other words, the enrichment to the owners must be unjust." *Bouriez v. Carnegie Mellon Univ.*, Civ. A. No. 02-2104, 2005 WL 3006831, at *13 (W.D.Pa. November 9, 2005) (quoting *Myers*, 498 A.2d at 969).

The Court now turns to the evidence presented at trial to determine where the preponderance

lies regarding Plaintiff's claim of unjust enrichment.

1.   *Benefit Conferred*

Defendants argue that Plaintiff has not met its burden of proof regarding the first element of its unjust enrichment claim, stating that Plaintiff "State Steel did not confer any benefit directly upon" Defendants.  (Docket No. 129 at 8).  The argument continues that as no contractual relationship existed between Plaintiff and Defendants, all of the steel was ordered by Clark and delivered to Clark's manufacturing facility, that any benefit conferred by Plaintiff in this case was conferred on Clark and not Defendants.  *Id*.  Plaintiff counters that a benefit was conferred on Defendants as Defendants received the steel buildings at the A & M Composting facility "which was fabricated by Clark using steel from State Steel."  (Docket No. 125).

Under Pennsylvania law, "[t]he claim of unjust enrichment simply requires that plaintiff 'confer' benefits on a defendant; it does not require that plaintiff 'directly confer' those benefits." *Global Ground Support, LLC v. Glazer Enter., Inc.*, Civ. A. No. 05-4373, 2008 WL 4443838, at *5 (E.D. Pa. September 29, 2008)(quoting *Baker v. Family Credit Counseling Corp.*, 440 F.Supp.2d 392, 420 (E.D. Pa.2006).  Moreover, the Pennsylvania Supreme Court has recognized that this element may be satisfied in situations in which a subcontractor or supplier provides goods or services to an ultimate user or owner through a general contractor.  *D.A. Hill Co. v. Clevetrust Realty Investors*, 524 Pa. 425, 432, 573 A.2d 1005, 1009 (Pa.1990)(holding that under certain circumstances a claim of unjust enrichment can arise between a subcontractor and ultimate owner).

Here, the evidence of record demonstrates that Plaintiff supplied steel to the end user Defendants, albeit through Clark as general contractor and another entity that galvanized the steel. Plaintiff was not required to prove that it had supplied the steel directly to Defendants, as argued by

Defendants here. Accordingly, Plaintiff has proven by a preponderance of the evidence that Plaintiff conferred a benefit upon Defendants.

2. *Appreciation of Such Benefit*

Turning to the second element of an unjust enrichment claim, it is undisputed that Defendants continue to use the buildings at the A & M Composting facility which contains the steel provided by Plaintiff. Accordingly, the Court finds that Plaintiff has also proved by a preponderance of the evidence that Defendants have appreciated such a benefit.

3. *Inequitable Circumstances*

The Court now turns to the crux of Defendants' argument, that, under the circumstances present here, the conferral of a benefit by Plaintiff and appreciation of same by Defendants is not inequitable so as to constitute unjust enrichment. Defendants' argument relies on the Superior Court's decision in *Myers*. In *Meyers,* the payment in full to a contractor for the work and materials of both the contractor and subcontractor for the work performed, where the contractor subsequently failed to make payments to the subcontractor, was found not to sustain a claim for unjust enrichment. *Id.* at 969. The Pennsylvania Superior Court determined that obligating the property owner to pay the subcontractor for the materials and work supplied to the contractor would in essence amount to making them pay twice. *Id.* Because the property owners had already paid the contractor for the work and materials, the Court determined that "it can hardly be said that the owners' 'enrichment' from the plumbing and heating materials is unjust." *Id.*

With respect to payments made by Defendants for the subject project, the Court finds that the evidence at trial demonstrates that the contract price for the fabrication of the buildings between Defendants and Clark was paid in full by Defendants. A & M Composting, Inc., one of the

Defendants, contracted with Clark for the fabrication of three steel buildings in exchange for payment by A & M Composting of $2,418,476.00. The Agreement provided that the price of $2,418,476.00 was firm and that any fluctuations in the price of raw materials (including the steel provided by State Steel) would not affect the total purchase price owed by A & M to Clark. *Id*. That purchase price was then altered by Change Order 1, which provided that the total purchase price would be $2,537,935.22 after the engagement of mitigation subcontractors T. Bruce Sales and Extreme Machine.

At trial, the parties stipulated to the admission of Joint Exhibit 25, which the Court admitted at the outset. Joint Exhibit 25 is a spreadsheet documenting payments made by Defendants for the A & M Composting Project to Clark, its subcontractors and the mitigation subcontractors which were hired by Defendants after Clark had performance problems. *Joint Trial Ex.* 25 at 1. That document indicates that Defendants paid $2,752,329.00 to Clark and the various other subcontractors for the costs of the A & M Composting Project. *Id*. Fox confirmed the contents of Joint Trial Exhibit 25 at trial and testified that said exhibit contained a summary of all payments made by Defendants for the A&M Composting facility project. *Tr. 5/6/08* at 78.

Further, Defendants did not object to the admission of Defendants' Exhibit 1, the voluminous business records offered in support of Joint Trial Exhibit 25. *Defendants' Ex. 1*. In this Court's estimation, the evidence of Defendants' payments was not refuted by Plaintiff or any other evidence of record. Therefore, it was established by Defendants at trial that the total amount of payment by Defendants was in excess of the total purchase price of $2,537,935.22 set forth in the agreement between A & M and Clark and amendment thereto. *Joint Trial Ex.* 13 at ¶ 6. Joint Exhibit 25 also demonstrates that Clark Building Systems, Inc. was paid $730,684.02 by A &M. *Joint Trial Ex. 25*

at 1. Accordingly, the Court finds that the evidence at trial supports a finding that Defendants made payments to Clark and its suppliers/subcontractors in excess of the contract price with Clark including payment of $730,684.02 to Clark itself. In accord with *Myers*, as Defendants have fully paid their contractual obligations to Clark, Plaintiff has failed to meet its burden of proof to demonstrate that the circumstances are unjust.

However, the Court's inquiry cannot end here. The Supreme Court of Pennsylvania has held that "where a subcontractor has provided services and chattels to an owner who had no direct contractual relationship to the subcontractor, ... the owner's retention of the benefit without paying any compensation to the subcontractor would not be unjust if the owner did not contract directly with or mislead the subcontractor." *D.A. Hill Co.,* 524 Pa. at 432, 573 A.2d at 1009; *see also Ravin, Inc. v. First City Co.*, 692 A.2d 577, 581 (Pa.Super. 1997); *Aquatrol Corp. v. Altoona City Authority* No. Civ. A. No. 03-252J, 2006 WL 2540797, at *12 (W.D.Pa. 2006). Therefore, this Court is required to determine "whether the property owner had direct dealings with the subcontractor, which caused the subcontractor to perform work." *Limbach,* 905 A.2d at 577.

The Court finds that the evidence at trial demonstrated that Plaintiff was not misled during its direct dealings with Defendants. It is stipulated that Plaintiff State Steel was paid a total of $280,000 by Defendants. (Docket No. 113 at ¶ 9). An initial down payment of $100,000 was made to Plaintiff from the joint account of Clark and Defendants in order to hold the price of steel and due to Plaintiff's concerns about Clark's creditworthiness. Plaintiff made its first shipment to Clark on May 17, 2004 and then made four (4) additional shipments during a period ending on May 24, 2004. *Joint Trial Ex.* 1. Invoices for each shipment were sent to Clark with a total invoiced value of $93,420.45. *Joint Trial Ex.* 1. Next, in a letter dated May 26, Fox wrote to Plaintiff that "[w]ith

respect to *any balance that Clark may owe your company* for web materials, our company is willing, with Clark's permission, to pay you directly or by joint check made payable to Clark and your company within the seven day period, *as long as our payment is credited by Clark against the amount due under our contract with Clark.*" *Joint Trial Ex.* 13 (emphasis added). At her deposition, Berg testified that she did not know why the letter was sent, believed that payment for the steel supplied by Plaintiff would still be made by Clark for the sums owed by Clark and would not have expected that Defendants would pay any amount in excess of their contract with Clark. *Tr. 5/6/08* at 120-122, 124, 129-130 and 134.

After the receipt of the letter by Plaintiff, it made twelve (12) more shipments of steel to Clark and sent invoices totaling $230,275.35 to Clark prior to receiving a second payment. *Joint Trial Ex.* 1. Clark directed Defendants to make the second payment to Plaintiff. (Docket No. 113 at ¶ 7). Defendants, in turn, issued a check dated August 5, 2004 to Plaintiff in the amount of $90,000. *Id.* Three (3) more shipments of steel and invoices totaling $63,427.95 were then sent to Clark by Plaintiff. *Joint Trial Ex.* 1. Clark directed Defendants to pay these invoices and Defendants made a third payment to Plaintiff on September 27, 2004 in the amount of $90,000. (Docket No. 113. at ¶ 8). Thereafter, Plaintiff made an additional seven (7) shipments of steel to Clark and sent corresponding invoices totaling $102,778.40 over the period between September 27, 2004 and November 19, 2004. *Joint Trial Ex.* 1. Clark did not direct Defendants to make any further payments until Wansor's letter of July 11, 2005 demanding payment by Defendants and no further payment was received by Plaintiff for said shipments. Plaintiff never shipped steel or sent invoices directly to Defendants, all of which went to Clark. The evidence at trial further showed that Clark made no direct payments of the invoices to Plaintiff and did not forward any of the invoices to

Defendants. Finally, it is undisputed that Plaintiff was not paid the difference between the invoiced amount ($489,902.15) and the amount paid by Defendants ($280,000), or a sum of $209,902.15 that remains due and owing to Plaintiff.

Considering these facts, it cannot be said that Plaintiff was misled by Defendants as it continued to deal with Clark, shipping steel and sending invoices for each corresponding shipment to Clark both before and after the May 26, 2004 letter. Moreover, upon receipt of the Fox letter, Plaintiff did not expect that an amount in excess of the contract price would be paid by Defendants and did not attempt to negotiate any terms or conditions, including credit terms, with Defendants directly. Plaintiff instead continued to do business with Clark, extending substantial credit to a business that it knew had credit issues while taking no steps to insulate its business from this risk. It is clear to the Court that Plaintiff has failed to prove by a preponderance of the evidence that it was misled by Defendants so as to save its claim of unjust enrichment.

Under the circumstances present here, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that it would be inequitable for Defendants to retain the steel in question. Defendants' (primarily A & M Composting) only contractual obligation relating to this matter was to Clark pursuant to the April 14, 2004 agreement and as amended in Change Order 1. The May 26, 2004 letter merely set forth an accommodation under which Defendants could make payments directly to Plaintiff, providing for a more efficient manner of payment. Plaintiff also did not prove by a preponderance of the evidence that any further assurances or representations regarding payment were made to it by Defendants. The evidence of record supports a finding that Defendants made payments to Clark in excess of that owed under their agreement, mainly due to Clark's non-performance. In addition, the record reflects that Clark was paid $730,684.02 by Defendants. In this

Court's estimation, Clark, as general contractor, having: (1) received steel material and the invoices of record from Plaintiff; (2) fabricated the steel; (3) delivered the steel to Defendants; and (4) received payment from Defendants, was obligated to make the payments to Plaintiff. While it is undisputed that Plaintiff was not paid for the steel in question, in light of Clark's conduct, the Court cannot find that circumstances are unjust as to require Defendants to pick up Clark's tab and pay twice for the same goods.

### 4. *Conclusion*

Accordingly, based on the evidence presented at trial, the Court finds that Plaintiff failed to prove by a preponderance of the evidence that under the circumstances it would be inequitable for Defendants to retain the steel provided by Plaintiff to Clark which was incorporated into the buildings erected at the A & M Composting facility. Thus, Defendants' motion for judgment under Rule 52(c) as to Plaintiff's unjust enrichment claim is GRANTED.

### B. Fraudulent Inducement

Defendants have also moved for judgment under Rule 52(c) of the Federal Rules of Civil Procedure as to Plaintiff's claim of fraudulent inducement. As stated in this Court's earlier Memorandum Opinion, under Pennsylvania law, to recover on a claim of fraud or fraudulent inducement, the plaintiff must demonstrate by clear and convincing evidence: 1) a representation[14]; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused

---

[14] "Representation" is defined as "[a] presentation of fact -- either by words or by conduct -- made to induce someone to act." BLACK'S LAW DICTIONARY (8th ed. 2004).

by the reliance. (Docket No. 70 (citing *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. 2002)(quoting *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 560 (Pa. 1999)))); *see also Overall v. Univ. of Pa.*, 412 F.3d 492 (3d. Cir. 2005); *McCloskey v. Novastar Mortg., Inc.*, Civ. A. No. 05-1162, 2007 WL 2407103, at *9 (E.D. Pa. Aug. 21, 2007) (citations omitted); *see also Fahs-Rolston Paving Corp. v. Ammann & Whitney Pennsylvania, Inc.*, Civ. A. No. 05-CV-5082, 2007 WL 2345280, at *2 (E.D. Pa. Aug. 15, 2007) (same) (citation omitted). Further, a misrepresentation will be deemed material where "it is of such character that had it not been made, . . . the transaction would not have been consummated." *Sewak v. Lockhart*, 699 A.2d 755, 760 (Pa.Super.1997) (citation omitted).

### 1. *Material Representation*

In ruling on Defendants' motion for summary judgment on Plaintiff's fraudulent inducement claim, this Court held that genuine issues of material fact existed as to Defendant A & M's intentions in sending the May 26, 2004 letters to State Steel and the other vendors, as well as whether alleged statements by Bob Clark (controller for the Defendant A & M) which guaranteed payment to State Steel constituted fraudulent misrepresentations. (Docket No. 70). The Court now turns to the evidence presented at trial to resolve the disputed factual issues.

Regarding the alleged guarantee by Bob Clark, Plaintiff did not call Bob Clark as a witness at trial to inquire as to whether any statements or assurances were made by him to State Steel.[15] Plaintiff's President, Berg, did offer some testimony with respect to statements allegedly made by Defendants. First, she testified that aside from the May 26, 2004 letter from Mr. Fox, Plaintiff did

---

[15]
The Court acknowledges that while Plaintiff did not call Mr. Clark as a witness that he was listed as a witness which Plaintiff may call on Plaintiff's Witness List and Offers of Proof filed prior to the trial. (Docket No. 101 at 6).

not have any other written correspondence with Defendants. *Tr. 5/6/08* at 117-118. Second, she

stated that she did have several conversations with Pat Mascaro's secretary Cindi, as well as Bill Fox

or Bob Clark. *Id.* at 117. She later clarified that she believed that it was Bob Clark on behalf of

Defendants with whom she had spoken. Third, she testified that Plaintiff's credit manager had a

conversation with either Bill Fox or Bob Clark (Controller) of Defendants which gave Plaintiff "a

comfortable feeling that we would be okay with them and that we could continue on shipping." *Tr.

5/6/08* at 105. Her testimony regarding these conversations was at best general in nature and did not

identify any specific statements made that can be considered a material representation. Accordingly,

the Court finds that Plaintiff has failed to meet its burden of proof.

With respect to the May 26, 2004 letter, the Court finds that it constitutes a material

representation. Defendants do not argue otherwise, although they strenuously object to the

classification of this letter as a misrepresentation. Again, the applicable portion of that letter from

Fox to Berg states that:

> We understand that Clark has contracted with your company to
> provide web materials for the A&M reconstruction project. We also
> understand that the amount of their contract with your company is
> approximately $450,000 and that Clark has made a substantial down
> payment to your company.
>
> I am writing to advise you that under our contract with Clark, we
> make payment to Clark within seven days of the building material
> delivery for each completed phase, without defect, to our site. With
> respect to any balance that Clark may owe your company for web
> materials, our company is willing, with Clark's permission, to pay
> you directly or by joint check made payable to Clark and your
> company within the seven day period, as long as our payment is
> credited by Clark against the amount due under our contract with
> Clark. It is our understanding that Clark is agreeable to this
> arrangement.

*Joint Trial Ex.* 14.  The statements in the letter clearly constitute representations and also involve the payment terms for certain goods which are material to the transaction at hand.  The evidence at trial established that only the letter constitutes a material representation.  Accordingly, the Court will analyze the statements in this letter to determine if Plaintiff met its burden of proof at trial.

2.  *False Statement/Misrepresentation*

Plaintiff argues that the statements by Fox in his letter were made falsely and/or constitute misrepresentations of fact.  (Docket No. 125).  Plaintiff points to the following evidence in support of its contention that the statements constitute misrepresentations: (1) that the value of sums deposited in the joint account ($507,619) was not disclosed in the letter; (2) that the letter does not state that Defendants will not pay Clark an amount in excess of its contract price nor state the value of Defendants' contract with Clark ($2,418,476.00); and, (3) that the October 7, 2004 letter from Fox to Wansor indicated that Defendants agreed to pay subcontractors directly.  (Docket No. 125 at 7-9).  Defendants maintain that the letter contains no false statements but merely describes a vehicle to pay Plaintiff in a more efficient manner.  (Docket No. 129).

Upon review of the statements in the letter and the record as a whole, the Court agrees with Defendants that the letter did not contain any false statements or misrepresentations.  Regarding the non-disclosure of the initial value of the joint checking account, Fox states in the letter that Defendants were willing, with Clark's approval, to pay Plaintiff either "directly or by joint check made payable to Clark" and Plaintiff.  *Joint Trial Ex.* 13.  As the language is drafted in the alternative, giving Defendants an option to pay either directly or through the joint account, it is clear that the non-disclosure of the value of the sums deposited in the joint account does not constitute a misrepresentation.  For the same reason, the non-disclosure that similar letters were sent to EBC and

Youngstown Pipe and Supply with total values in excess of the initial joint account value do not constitute misrepresentations. Furthermore, Fox testified at trial that the monies in the joint account were not designated to any specific entity, but merely a second deposit according to the payment schedule in the agreement between Clark and Defendants. *Tr. 5/6/08* at 74:6-76:7.

The Court also finds that the non-disclosure of the fact that Defendants would not pay any amount in excess of their contract price with Clark is not a misrepresentation because Berg testified at her deposition that she did not interpret the letter as expecting that Defendants would pay any amount in excess of their contract price with Clark. As to the non-disclosure of the value of the contract between Clark and Defendants, Defendants had no duty to disclose the full contents of their agreement with Clark to Plaintiff and Plaintiff never requested the same. In addition, the agreement does not set forth an itemized budget to be followed by Clark or in any way imposes on Clark a certain sum to be used in its steel supply purchases. Clark was free to perform its obligations as it saw fit and, in fact, used several different suppliers in order to attempt to meet its obligations. Had the full contract price been disclosed in this letter, in this Court's estimation, the value to Plaintiff, if any, would be very limited due to Clark's use of many suppliers and the lack of any itemized budget in said agreement. Accordingly, the non-disclosure of the contract's value does not constitute a misrepresentation. Finally, the Court does not interpret the October 7, 2004 letter of Fox as agreeing on behalf of Defendants to pay all of Clark's subcontractors directly, but merely to pay the mitigation subcontractors in such manner.[16]

The Court also finds credible the testimony of Fox, who testified that the letter was drafted

---

[16]

In making this determination, the Court understands that the prior letters referenced in the October 7, 2004 letter were the September 27 and 30 letters from Fox to Wansor.

at the request of Clark and included certain facts that Clark requested, including the value of Clark's agreement with Plaintiff. Fox further testified that he had no prior dealings with Plaintiff and knew nothing about the company until around the time that the letter was drafted. By agreeing to draft the letter, Fox did not intend to obligate Defendants to pay any amount above the agreed to contract price between Clark and Defendants. In this Court's estimation, Fox's testimony is supported by the language of the letter itself. The letter clearly states that Defendants were "willing" with the "permission" of Clark to pay "any balance that *Clark may owe*" Plaintiff directly or through a joint account as long as the amounts paid were deducted from the balance that Defendants owed Clark under their agreement. *Joint Trial Ex.* 14 (emphasis added). The Court agrees with Defendants that the language of the letter, as drafted, seeks to establish a process by which payment could be made and does not obligate Defendants as a guarantor of the agreement between Clark and Plaintiff. This Court's interpretation is further supported by the fact that Defendants used this vehicle to make two payments to Plaintiff, after being instructed to do so by Clark, while Plaintiff continued to send all shipments of steel and invoices directly to Clark. There is no evidence of record that indicates that Plaintiff had any direct written correspondence with Defendants. In fact, Berg testified to the absence of the same. Accordingly, the Court finds that plaintiff has failed to meet its burden to prove by clear and convincing evidence, *see Skurnowicz*, 798 A.2d at 793, that the statements contained in Fox's May 26, 2004 letter constituted misrepresentations material to the transaction at hand.

3.    *Remaining Elements*

As the Court has found that the May 26, 2004 letter did not contain any misrepresentations, Plaintiff also cannot meet its burden to prove that Defendants acted with intent to mislead Plaintiff

into relying on said misrepresentations, that Plaintiff justifiably relied on misrepresentations, or that Plaintiff's reliance was the proximate cause of its damages. Further, the Court has already found that Plaintiff was not misled by the May 26, 2004 letter of Fox as set forth in the Court's discussion of Plaintiff's unjust enrichment claim above. The Court's analysis there is applicable here as well and supports a finding that Plaintiff has failed to meet its burden of proof regarding its claim of fraudulent inducement. Thus, the Court finds that Plaintiff has not met its burden of proof with respect to the intent, justifiable reliance or proximate causation elements of its claim of fraudulent inducement.

4. *Conclusion*

Upon consideration of the evidence at trial, the Court finds that Plaintiff failed to meet its burden of proof at trial regarding its fraudulent inducement claim. Accordingly, Defendants' motion for judgment under Rule 52(c) as to Plaintiff's fraudulent inducement claim is GRANTED.

## V. CONCLUSION

Based on the foregoing, Plaintiff State Steel's motion for reconsideration is DENIED and Defendants American Compost Corporation, A & M Composting and Solid Waste Services, Inc., doing business as J.P. Mascaro & Sons' motions for judgment under Rule 52(c) as to Plaintiff's claims of unjust enrichment and fraudulent inducement are GRANTED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: November 13, 2008

cc/ecf: All Counsel of Record.